**UNITED STATES of America**

v.

**SAMEL REFINING CORPORATION, E. F. Drew & Co., Inc., Bernstein & Bernstein Realty Corporation, First Federal Savings and Loan Association.**

**Civ. A. No. 68–383.**

United States District Court, E. D. Pennsylvania.

May 11, 1970.

Louis C. Bechtle, U. S. Atty., by Sidney R. Bixler, Tax Division, Dept. of Justice, Washington, D. C., for plaintiff.

Goodis, Greenfield, Narin & Mann, by Allen J. Levin, Philadelphia, Pa., for E. F. Drew & Co., Inc.

OPINION

HANNUM, District Judge.

This is a suit to foreclose federal tax liens upon a sum of money deposited with the defendant First Federal Savings and Loan Association. Presently before the court are cross motions for summary judgment, one by E. F. Drew & Co., Inc. (hereinafter "Drew") one of the defendants, and one by the United States of America, the plaintiff herein. Since the facts are not in dispute and have been stipulated, there is presented solely an issue of law as to which of these parties is entitled to the fund in question. The claim of each of the moving parties exceeds the amount of the fund, and, accordingly, the claim of the successful party will consume the entire fund.

In September 1961, Samel Refining Corporation (hereinafter "Samel") entered into a five year lease for the premises located at 2929 E. Schiller Street, beginning October 1, 1961, and deposited with Bernstein and Bernstein Realty Corporation, the lessor, the sum of $9,000.00 pursuant to the following provision contained in Section 39 of that lease:

"SECURITY DEPOSIT: Lessee shall deposit with Lessor the sum of Nine Thousand Dollars ($9,000) as security for the faithful performance of all the terms and conditions of this Lease. If Lessee should fail at any time to comply with any of the terms and conditions of the Lease, Lessor shall have the right to use the said sum for the purpose of curing any default or for reimbursing Lessor for any damages or costs caused by such default, without affecting any other rights or remedies reserved to Lessor under the terms of this Lease. If the Lessee shall have faithfully complied with all the terms and conditions of this Lease and shall have left the premises in good order and condition, the aforesaid deposit, or so much thereof as shall not have been used for the purpose of curing any default,

shall be repaid to the Lessee upon the termination of this Lease."

The lessor deposited this sum in a special escrow account with the First Federal Savings and Loan Association.

On March 12, 1965, Drew entered into a security agreement with Samel by which it undertook to purchase raw materials for Samel's operations, upon Samel's undertaking to repurchase such raw materials and granting to Drew a continuing security interest in all of Samel's existing accounts receivable and contract rights, together with the proceeds thereof as security for Samel's obligation to pay Drew the purchase price of the raw materials.

In Section 2(b), the security agreement recites that the term "contract rights" shall have the meaning contained in Article 9 of the Uniform Commercial Code.

In April 1965, following the execution of the Security Agreement, Drew perfected its security interest by filing with the appropriate state and county officers financing statements covering, among other things, all existing and hereinafter acquired accounts receivable and contracts rights, together with the proceeds thereof. The financing statements further stated in a separate paragraph that the proceeds of the collateral were covered and claimed.

In December 1965, Samel defaulted in the performance of the obligations imposed by the lease, but the lessor was able, however, to obtain a new lease with a third party for the premises so that it sustained no loss and, therefore, has disclaimed any right or interest to the security deposit in question.

In the summer of 1965, subsequent to the perfection of Drew's security interest, the government entered tax liens against Samel.

■ The first question that this court must resolve is whether Samel's right to the return of the security deposit under the lease was a "contract right" within the meaning of the Uniform Commercial Code.

Section 106 of Article 9 of the Uniform Commercial Code defines the term "contract right" as "any right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper."

Since it is clear that a lease agreement is a valid contract, the question, therefore, is whether the right to return of the security deposit was a "right to payment under a contract not yet earned by performance."

A lease agreement imposes upon the parties thereto certain rights, duties and obligations which must be performed and fulfilled during the period in which the lease is in full force and effect. Thus it is clear from the language of the lease itself and from the nature of a lease agreement that it was necessary for the lessee, Samel, to faithfully perform all the obligations imposed upon it under the lease agreement before its right to payment under the lease by the lessor of the unused portion of the security deposit would mature.

Therefore the court concludes that this right of Samel to the payment of the unused portion of the security deposit conditioned upon the subsequent performance of its obligations under the lease was a "contract right" within the definition and intention of the Uniform Commercial Code, and this contract right was in existence at the time that Drew perfected its security interest on all of the contract rights of Samel and the proceeds thereof.

The plaintiff, however, additionally contends in the alternative that even if the security deposit in question was a contract right at the time the security agreement was signed and the financing statement filed, it became, at the termination of the lease, a general intangible, and, as such, escaped the coverage of the security agreement and financing statement. The argument thereby advanced is that when a contract right matures by reason of the performance of those conditions which made it a contract right at the outset, a security agreement

covering "contract rights and proceeds thereof" is no longer enforceable if it does not also include the category in which it would have been originally classified had it been a matured right when the security agreement was executed, i.e., a general intangible.

 The government argues that since the definition of "proceeds" in Pa.Stat.Ann. tit. 12A § 9–306 (Supp. 1969) does not specifically include the situation in which a contract right may become a general intangible, the inclusion of the term "proceeds" in the financing statement does not bring the present right to payment within the ambit of the security agreement's coverage. While events may occur at a later date which would place certain intangible collateral in a different category or classification if such collateral were at that time to be made the subject of a security agreement, it does not necessarily follow, however, that a valid security interest in the intangible collateral in question and the proceeds thereof is divested when future events occur which change the Commercial Code classification thereafter applicable to it. In the present case the security agreement and financing statements expressly extended their coverage to the proceeds of the collateral which they secured. It is therefore apparent that the parties intended that the coverage of the security agreement extend beyond the time when any "contract right" which was pledged as collateral would mature and the proceeds or right to proceeds therefrom would be realized. To hold otherwise would negate the intent of the parties that the coverage of the security interest extend to the proceeds of the contract rights. To hold otherwise would result in the anomalous situation of divesting a valid and perfected security interest in a contract right and the proceeds therefrom at the only time when it would become meaningful, i.e., when performance has occurred which entitles the debtor to the right of payment. See Farnum v. Merrill, Inc., 264 A.2d 150 (Me.Sup.Ct. April 8, 1970).

Therefore, since the security agreement expressly extended its coverage to the proceeds of the secured collateral, since the proceeds in question are clearly identifiable and since the security interest of Drew was perfected prior to the filing of the tax liens by the plaintiff, the fund in question is covered by the perfected security agreement of defendant Drew, and its motion for summary judgment is granted.