**In re SMS, INC., d/b/a The Bookworm, Debtor.**

**Bankruptcy No. 81–40330.**

United States Bankruptcy Court, D. Kansas.

Nov. 18, 1981.

William T. Nichols, Marshall, Hawks, Hendrix, Schenk & Nichols, Topeka, Kan., for Commerce Bank & Trust Co.

Cary L. Standiferd, Topeka, Kan., Trustee.

John K. Pearson, Wichita, Kan., Asst. U. S. Trustee.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

The creditor, Commerce Bank and Trust Company (Commerce), seeks an order authorizing the trustee to abandon any interest in a credit memo owed the debtor by Palmer News, Inc. at the time the debtor's chapter 7 petition was filed.

The trustee opposes abandonment asserting Commerce was not secured, and alternatively was not perfected in the credit memo. The trustee also requests attorney's fees for services rendered as the trustee's attorney, and disbursement fees under § 326 if ordered to abandon the money collected on the credit memo.

The issues for determination are:

1. Was Commerce's interest in the credit memo secured and perfected.

2. After the trustee collected the amount due the debtor on the credit memo, was Commerce's interest in the money collected both secured and perfected.

3. Is the trustee entitled to disbursement compensation under § 326(a) of the Code.

4. Is the trustee, serving as attorney for the trustee, entitled to attorney's fees.

## FINDINGS OF FACT

Before the debtor's chapter 7 petition was filed, it operated a retail bookstore and purchased books and periodicals from Palmer News, Inc. The creditor, Commerce Bank and Trust Company (Commerce) and the debtor entered into three security agreements on April 23, 1980. These security agreements were attached to Commerce's proof of claim. The first, entitled "Security Agreement", granted:

*a security interest in the property described below together with any and all additions, accessions, substitutions and proceeds thereto and therefrom (hereinafter called "Collateral").*

Typed in as collateral was:

*All Equipment, Furniture and Fixtures now owned, purchased with loan proceeds and hereafter acquired.*

The second security agreement entitled "Security Agreement Accounts and Contract Rights", granted a security interest *in all accounts, contract rights, general intangibles, instruments and chattel paper now owned by Debtor, as well as any and all thereof that may be hereafter acquired by Debtor, and in and to all proceeds and products thereof, and in and to all returned or repossessed goods arising from or relating to any contract rights, accounts or other proceeds of any sale or disposition of inventory . . .*

The third security agreement was entitled "Inventory" and granted a security interest in

*all of debtor's inventory, general intangibles, now owned by Debtor, and in and to all proceeds and products thereof, and in and to all returned or repossessed goods arising from or relating to any contract rights, accounts or other proceeds of any sale or other disposition of inventory . . .*

All three agreements were signed by Commerce's loan officer, Jerri Head, and the debtor's president, Sally L. Davis.

Commerce filed two financing statements—one with the Kansas Secretary of State and one with the Shawnee County Register of Deeds on April 28, 1980. The financing statements were standard UCC–1 forms and covered:

*All Inventory now owned, purchased with loan proceeds and hereafter acquired, and all additions and accessions thereto, and all present and future Accounts Receivable, proceeds arising therefrom, chattel paper, contract rights and general intangibles however evidenced or acquired. All equipment, furniture and fixtures now owned, purchased with loan proceeds and hereafter acquired.*

The financing statement filed with the Register of Deeds also checked the UCC–1 boxes claiming products of collateral and the box covering products of collateral. These boxes were not checked on the UCC–1 filed with the Secretary of State.

These financing statements were attached to Commerce's proof of claim.

Sometime after the security agreements were entered into but before the debtor filed its chapter 7 petition on May 7, 1981, it returned some inventory to Palmer News and received a credit balance, or credit memo. In Schedule B–3 of its petition, the debtor lists the credit at $4,070.61. In its application to abandon property, Commerce states the credit is $4,020.61.

On June 3, 1981 after the debtor filed its petition the Court approved an order signed by the trustee, Commerce's attorney and the debtor's attorney, authorizing the trustee to abandon to Commerce all inventory owned by the debtor at the time of filing. Thereafter, the trustee apparently sent out a demand letter and collected the credit memo in cash from Palmer News.

On July 21, 1981 the Court signed an order authorizing the trustee to serve as his own attorney.

On August 19, 1981 Commerce made application to the Court for an order allowing the trustee to abandon the estate's interest in the credit memo.

On October 28, 1981 a hearing was held. The trustee opposed abandonment and requested attorney's fees as attorney for the trustee and disbursement compensation under 11 U.S.C. § 326 if ordered to abandon the credit collected in cash.

## CONCLUSIONS OF LAW

Commerce attached to its proof of claim three written security agreements dated April 23, 1980 signed by the debtor's president granting a security interest in all equipment, furniture, fixtures, accounts, contract rights, general intangibles, instruments, chattel paper, and inventory then owned or after acquired by the debtor.

These security interests were perfected by Commerce on April 28, 1980 when it filed a financing statement (UCC–1 form) with the Kansas Secretary of State pursuant to K.S.A. § 84–9–401(1)(c) (Supp.1980), containing the same recitation of collateral. Thus, for the purpose of this opinion, Commerce was both secured and perfected as to the debtor's inventory, accounts and general intangibles.

■ In addition, the security agreements granted a security interest in proceeds generated by the collateral. Of course, under the 1972 revised Uniform Commercial Code (U.C.C.) as adopted in Kansas, it is no longer necessary to claim proceeds as part of the collateral, and therefore Commerce had a security interest in the proceeds whether or not it expressly listed proceeds in its security agreement or financing statements. K.S.A. § 84–9–306(2)(3) (Supp. 1980); J. White & R. Summers, Uniform Commercial Code § 23–9, at 933 (2nd Ed. 1980).

With these preliminary matters out of the way, the Court now turns to the real issues at hand. The Court must decide if Commerce is secured and perfected as to the credit memo, received by the debtor from its book supplier, when the debtor returned unsold inventory to its supplier before filing for an order for relief.

■ Commerce argues the credit memo is proceeds generated by exchange of inventory and the Court agrees.

*"Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds.* K.S.A. § 84–9–306(1) (Supp.1980). In other words, proceeds is whatever is substituted for the original collateral. *J & J Auto Sales, Inc.*, 9 UCC Rep. 909, 912 (E.D.Bankr. Tenn.1971). Though the issue of whether a credit memo is proceeds appears to be one of first impression, it seems clear the inventory (the original collateral) was *exchanged* by the debtor in return for *receipt* of the credit memo, and therefore the Court holds the credit memo was proceeds of the exchange of the inventory within the meaning of K.S.A. § 84–9–306(1). Even assuming arguendo the credit memo is either an account ("a right to payment," see § 84–9–106) or a general intangible ("miscellaneous ... contractual rights" not included in accounts, see § 84–9–106 official comments), K.S.A. § 84–9–106, and though once again the Court could find no reported cases discussing credit memos, the Court finds a credit memo somewhat analogous to right of repayment of a deposit, which is a contract right (now called an account under K.S.A. § 84–9–106), see *United States v. Samel Refining Corp.*, 313 F.Supp. 684, 7 UCC Rep. 914 (E.D.Pa.1970), or analogous to a right to receive a tax refund which is a general intangible, see *In Re Certified Packaging, Inc.*, 8 UCC Rep. 95 (D.Bankr. Utah 1970); Davenport & Murphy, Secured Transactions, 76–78 (1978). Therefore, even if the credit memo was not proceeds, it would be an account or a general intangible and, in either case, it would be properly perfected by filing with the Secretary of State, K.S.A. § 84–9–401(1)(c).

■ Because the credit memo was proceeds, the next issue is did Commerce have a perfected interest in the proceeds. A security interest in proceeds is automatically perfected for the first 10 days after disposition of the original collateral, if the security interest in the original collateral was perfected as it was in the instant case. K.S.A. § 84–9–306(3). After the 10 day period expires, the security interest in proceeds becomes unperfected unless the proceeds are "non-cash" collateral, that can be perfected by filing in the same place required to perfect the original collateral. K.S.A. § 84–9–306(3)(a). "Non cash" collateral is all proceeds except *(m)oney, checks, deposit accounts, and the like* ... K.S.A. § 84–9–306(1). The Court has earlier characterized the credit memo as like unto an account or a general intangible, both of which are perfected by filing with the Secretary of State as is inventory also, K.S.A. § 84–9–401(1)(c), and both of which are "non cash" because they are not money, checks or deposit accounts. Therefore under § 84–9–306(3)(a) Commerce had a security interest in *non cash proceeds* which

would be perfected by filing in the same place required to perfect inventory (the original collateral) and thus had a perfected security interest in the proceeds—the credit memo—at the time the debtor declared bankruptcy.

Upon filing bankruptcy [an insolvency proceeding under K.S.A. §§ 84–9–306(4) and –1–201(22)] the proceeds to which Commerce was entitled was governed by § 84–9–306(4), which provides Commerce would *prevail over the trustee as to (l) identifiable non-cash proceeds* . . . J. White & R. Summers Uniform Commercial Code § 24–6, at 1013 (2nd Ed. 1980); K.S.A. § 84–9–306(4)(a).

 The trustee in the instant case, however, sent out a demand letter on behalf of the bankruptcy estate and collected the credit memo in money from the debtor's supplier. This money thus became "cash proceeds." Even if considered cash collateral Commerce still would have a perfected security interest in the cash proceeds because a secured party retains its perfected security interest in cash proceeds, whether in the form of checks or money, *which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings* . . . K.S.A. § 84–9–306(4)(b), (c). Therefore if the trustee collects on an account, general intangible, or other non-cash proceeds, and thereby converts the non-cash proceeds into cash proceeds or if the proceeds were cash collateral, this creditor still retains a perfected security interest in the cash proceeds. *Any commingling or depositing of the cash did not occur prior to the insolvency proceeding.* K.S.A. § 84–9–306(4)(b), (c); *In Re Gibson*, 9 UCC Rep. 1193 (W.D.Bankr.Okla. 1969).

In sum, the money held by the trustee, representing collection of the credit memo by the trustee after bankruptcy was filed is valueless to the estate, because it is fully secured and perfected by Commerce. Therefore the Court orders the trustee to abandon his interest in this money to Commerce.

Perhaps anticipating this order, the trustee asserts, under 11 U.S.C. § 326(a) that he will be disbursing or turning over money to a party in interest holding a secured claim, and thus is entitled to reasonable compensation not to exceed the rates established in § 326(a).

 Under the holding of *In Re First Colonial Corp. of Am.*, 544 F.2d 1291, 1297 (5th Cir.), cert. denied 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977) and the law as stated in 11 U.S.C. § 328(c), 330,

> it is the court's responsibility to examine and evaluate each applicant's request to ensure that awards comply with the controlling standards set forth in section 330.

2 Collier on Bankruptcy ¶ 327.03[5], at 327–22, n.48 (15th Ed. 1981). Under § 330, the Court has the discretion to award to a trustee acting as his attorney,

> (1) reasonable compensation for <u>actual necessary services</u> rendered by such trustee . . . based on the time, the nature, the extent, and the value of such services, and the costs of comparable services other than in a case under this title.

11 U.S.C. § 330(a)(1). Furthermore, when a trustee is authorized to act as attorney for the estate, it is not intended that compensation should be allowed for the performance of the ordinary duties of a trustee. See 11 U.S.C. § 328(b); Bankr.Rl. 215(e), and Advisory Committee Notes; 2 Collier on Bankruptcy ¶ 327.03[5] (15th Ed. 1981). Section 328(b) allowing a trustee to serve as his own attorney was,

> not included to provide the trustee with a bonus by permitting him to receive two fees for the same service or to avoid the maxima fixed in section 326. <u>Thus this subsection requires the court to differentiate between the trustee's service as trustee, and his services as trustee's counsel, and to fix compensation accordingly</u> . . . Only services that he performs that are normally performed by trustee's counsel may be compensated under the maxima imposed by this section.

H.R.Rep.No.95–595, 95th Cong., 1st Sess. 329 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6285. The trustee's duties

and services he is required by statute to perform include:

*if a purpose would be served [to] examine proofs of claims and object to the allowance of any claim that is improper.*

11 U.S.C. § 704(4). A purpose is served when there *are assets that will be distributed.* S.Rep.No.95–589, 95th Cong., 2nd Sess. 93 (1978), U.S.Code Cong. & Admin.News 1978, p. 5879. Another purpose is to determine whether, through use of the trustee's avoiding powers, assets may become available. In the instant case, there were potential assets to be distributed—namely *collection of* the credit memo, and therefore the trustee's duty was to examine the proof of claim. Examination of Commerce's claim and a cursory reading of the attached security agreements and financing statements indicates Commerce had a perfected security interest, and a knowledge of § 84–9–306(3) further reveals that no matter what the classification of the credit memo, Commerce had a fully secured and properly perfected interest in it. Thus any time spent examining and ascertaining the claim is attributable to the trustee. Any legal advice necessary was minimal. At a hearing held, the trustee informed the Court that because Commerce did not file a financing statement claiming proceeds it was unperfected as to proceeds. It is no longer necessary in Kansas to claim proceeds in a security agreement or financing statement, and surely if the trustee did not know this, it is such an accepted legal principle that it would not take an attorney 1½ hours to ascertain. § 330(a)(1). Furthermore, the trustee asserted, and the Court agrees, there was some question of whether a credit memo was proceeds. If it was not proceeds, the trustee claimed, he could not ascertain from the proof of claim whether or not Commerce was secured or perfected, and thus it was necessary to hire an attorney to review this legal question. The Court disagrees this was a necessary service, however, and submits that a quick review of the proof of claim, attached security agreements, and financing statements plainly shows Commerce was secured and perfected as to the credit memo regard-

less of whether a credit memo is classified as proceeds of inventory, accounts, contract rights (now included in accounts under the revised 1972 UCC), or general intangibles. Thus, again, any attorney's fees incurred in examining a questionable, albeit interesting, legal point would be minimal under 11 U.S.C. § 330(a)(1).

Under § 326(a) the legislative history is extremely pertinent to the case at bar:

*It should be noted that the base on which the maximum fee is computed includes moneys turned over to secured creditors, to cover the situation where the trustee liquidates property subject to a lien and distributes the proceeds. It does not cover cases in which the trustee simply turns over the property to the secured creditors, nor where the trustee abandons the property and the secured creditor is permitted to foreclose.*

H.R.Rep.No.95–595, 95th Cong., 1st Sess. 327 (1977), U.S.Code Cong. & Admin.News 1978, pp. 6283–6284. Thus where a trustee undertakes to sell fully encumbered property, or property with only a slight equity in it, or when the trustee abandons the property to a secured claimant, there is no actual or constructive disbursement and the trustee cannot collect any compensation. See 2 Collier on Bankruptcy ¶ 326.01, at 326–16 to –19 (15th Ed. 1981). In the instant case, the trustee has been ordered to abandon the inventory and the Court has previously discussed that a review of the proof of claim revealed the credit memo was valueless to the estate. Consequently, before collection by the trustee, it should have been abandoned. The Court is mindful that a trustee will not always be able to ascertain whether accounts, general intangibles, or proceeds should be collected or abandoned. But in the instant case, where it was quite apparent from the proof of claim that the estate had no interest in the credit memo, the trustee should have abandoned. Furthermore, on June 3, 1981 this Court signed an order authorizing the trustee to abandon inventory to Commerce. After June 3, the trustee had no interest in the inventory,

and without an interest in inventory, he certainly had no interest in its proceeds. Thus to avoid any appearance of impropriety and to avoid any inference collection *by the trustee was not for their* [general creditor's] *interest, but was had for the purpose of enabling* [the trustee] ... *to collect commissions on the entire value of the* ... [credit memo]," *In Re Meadows*, 211 F. 948, 950 (2nd Cir. 1914, cert. denied 234 U.S. 763, 34 S.Ct. 997, 58 L.Ed. 1581 (1914), the Court finds there is no disbursement within the meaning of § 326(a) and the trustee is not entitled to any compensation for abandoning this property to Commerce. As the property is that of Commerce and the trustee is not entitled to a fee, neither is the trustee's attorney entitled to a fee from the creditor's fund.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure.