In re Donald W. KRUGER and Verna E. Kruger, Debtors.

Barry M. BARASH, Chapter 7 Trustee for Donald W. Kruger and Verna E. Kruger, Plaintiff,

v.

PEOPLES NATIONAL BANK OF KEWANEE, Defendant.

Bankruptcy No. 86–81112.
Adv. No. 86–8310.

United States Bankruptcy Court, C.D. Illinois.

Dec. 17, 1986.

Barry M. Barash, Barash, Stoerzbach & Henson, Galesburg, Ill., for plaintiff.

Charles D. Eastman, Andrews & Eastman, Kewanee, Ill., for defendant.

## OPINION AND ORDER

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

The facts of this matter are not in dispute. The Defendant made a loan to the debtors, and as security for the loan the debtors gave the Defendant a security interest in the debtors' 1985 corn crop, along with all proceeds from the crop. The debtors sealed the 1985 corn crop in the federal government's grain program which entitled them to a deficiency payment for the 1985 crop year (deficiency payment). The debtors received the deficiency payment and used it to repay the Defendant. The debtors then filed a Chapter 7 proceeding in bankruptcy and their trustee brought an adversary proceeding under Section 547 of the Bankruptcy Code alleging a preference, which came on to be heard on the Trustee's Motion for Summary Judgment. The Trustee contends the Defendant did not have a security interest in the deficiency payment, as its security agreement only covered the corn crop and proceeds thereof, and the deficiency payment is not proceeds. The Defendant contends the deficiency payment is proceeds which is covered by its security agreement. The determinative issue is whether the deficiency payment is proceeds and subject to the Defendant's security agreement.

Section 9–306 of the Uniform Commercial Code as adopted in Illinois, Section 9–306 Ch. 26 Ill.Rev.Stat., defines "proceeds" as being "whatever is received upon the sale, exchange, collection or other disposition of the collateral." The debtors' corn was sealed according to government regulations. Once sealed the debtors could dispose of the corn by one of two methods. If the price of the corn on the open market was higher than the sealing price, the debtors could have sold the grain on the open market and received the sale proceeds. Such a sale would obviously be a sale and the money received would be proceeds within the definition of Section 9–306. However, as the open market price for corn was below the sealing price the debtors elected to use the other method available to them, and they disposed of the corn through the government program obtaining from the federal government a higher price than could be obtained on the open market. The debtors transferred the corn to the federal government in exchange for money. This action constituted a sale of the corn and the monies received fall within the definition of "proceeds" under Section 9–306. As the Defendant's security agreement claimed proceeds, the Defendant was a secured creditor and there was no preferential payment. *See, In re Nivens*, 22 B.R. 287 (Bkrtcy.N.D.Texas 1982).

Relying on *In re Schmaling*, 783 F.2d 680 (7th Cir., 1986); *In re Weyland*, 63 B.R. 854 (Bkrtcy.E.D.Wis.1986); and *Matter of Binning*, 45 B.R. 9 (US Bkrtcy.Ct.S. D.Ohio, 1984), the Trustee argues pay-

ments pursuant to a federal government program are not proceeds and they can be claimed as security only where the creditor's security agreement specifically refers to them. This Court does not believe that is the holding of *Schmaling.* In *Schmaling,* the debtors were participating in the federal government's payment in kind ("PIK") program under which farmers received surplus grain in exchange for an agreement not to plant their crop. The creditor held a security interest in crops and proceeds. After first noting Section 9–306 required a sale, exchange, collection, or other disposition of the collateral for there to be proceeds, the court went on to hold the PIK payments were not proceeds, as no crops were planted and there were no crops which could be disposed of and which could give rise to proceeds. The holding in *Schmaling* requires analysis of the specific federal government program. Where the federal government program generates a payment without the creation of collateral in the first instance—i.e. a PIK payment made without the planting of a crop which can be disposed of, the creditor's security agreement must specifically claim the government payment and cannot rely upon a claim against proceeds. But where the federal government program generates a payment from collateral actually in existence and subject to the creditor's security agreement, the creditor can claim the payment as proceeds.[1] As the transaction between the debtors and the Defendant falls within the latter classification, the Defendant can claim the payment as proceeds.

For the reasons set forth above, the Plaintiff's Complaint be and the same is hereby DISMISSED, with costs assessed against the Plaintiff.

This Opinion and Order is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

---

1. A creditor can also claim the payment if it has specifically claimed a right to the government payment. *See, Production Credit Assn. of Fair-*

*mont v. Martin County National Bank of Fairmont,* 384 N.W.2d 529, (Minn.App.1986).