In re Donald W. KRUGER and Verna E. Kruger, Debtors.

Barry M. BARASH, Chapter 7 Trustee for Donald W. Kruger and Verna E. Kruger, Plaintiff,

v.

PEOPLES NATIONAL BANK OF KEWANEE, Defendant.

Bankruptcy No. 86–81112.
Adv. No. 86–8310.

United States Bankruptcy Court, C.D. Illinois.

Sept. 29, 1987.

Barry M. Barash, Barash, Stoerzbach & Henson, Galesburg, Ill., for plaintiff.

Charles D. Eastman, Andrews & Eastman, Kewanee, Ill., for defendant.

## OPINION AND ORDER

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

This matter came on to be heard on the Trustee's motion to reconsider this Court's Opinion and Order holding that government deficiency payments are "proceeds" under Section 9–306 of the Uniform Commercial Code, 68 B.R. 43. The motion was granted because the resolution of the issue is important to those involved with agricultural finance and a record needed to be developed to accurately set forth the nature of the government payment.

The facts are not in dispute. The Defendant made a loan to the debtors, and as security for the loan the debtors gave the Defendant a security interest in the debtors' 1985 corn crop, along with all "proceeds" from the crop. Neither the security agreement nor the financing statement referred to deficiency payments. The debtors enrolled in the federal government's Feed Grain and Wheat Program which entitled them to a deficiency payment for the 1985 crop year (deficiency payment). The debtors received the deficiency payment and used it to repay the Defendant. The debtors then filed a Chapter 7 proceeding in bankruptcy and their trustee brought an adversary proceeding under Section 547 of the Bankruptcy Code alleging a preference. The Trustee contends the Defendant did not have a security interest in the deficiency payment, as its security agreement only covered the corn crop and "proceeds" thereof, and the deficiency payment is not "proceeds". The Defendant contends the deficiency payment is "proceeds" which is covered by its security agreement. This Court's previous Opinion and Order held the deficiency payment was "proceeds".

The Trustee has taken the position that all forms of federal government farm subsidy payments, including deficiency payments, can be claimed by a secured creditor only if the security agreement and financing statement contain specific references to government subsidy payments and they cannot be claimed by a reference to "proceeds". This Court does not agree with the Trustee's broad position as it is this Court's view it is necessary to examine each particular government program to determine the basis or nature of the subsidy payment and then to determine if payments of that nature fall within the definition of the term "proceeds".

All government farm subsidy payments are not of a similar nature. There are a variety of government subsidy payments available to farmers, some of which have become the subject of litigation on the issue of whether they are "proceeds". For example, there is a government program for the abandonment of sugar beets. See *In re Munger*, 495 F.2d 511 (9th Cir.1974). Another government program provides payments for the termination of dairy herds. See *In re Weyland*, 63 B.R. 854 (Bkrtcy.E.D.Wis.1986). Under the Government's Payment In Kind (PIK) Program, producing corn and soybean farmers can receive surplus grain in exchange for an

agreement not to plant their intended crop. *See In re Schmaling*, 783 F.2d 680 (7th Cir.1986).

In addition to the PIK Program, producing corn and soybean farmers have basically three subsidy programs available to them. The first is the Agricultural Conservation Program which involves soil conservation where the government shares the cost of the farmer's soil conservation expenses. This program stands independent and is not in any way tied to the production of crops. The next program is the Price Support Program, which generates "sealing profits". Under this program the Commodity Credit Corporation (CCC) loans the farmer money at a predetermined price per bushel rate for the crop. If the open market price of the crop rises above the loan rate, the farmer can sell the crop on the open market and repay the loan. Any excess proceeds are available for the farmer's use. If the open market price of the crop drops below the loan rate, the farmer can dispose of the crop through the CCC at the subsidized rate, thereby realizing a profit the farmer would not be able to otherwise obtain. This profit is what is commonly known as the "sealing profit".[1] A farmer producing corn cannot participate in this program unless he is also participating in the Federal Feed Grain and Wheat Program. Such a requirement is not imposed on a farmer producing soybeans. The last program is the Federal Feed Grain and Wheat Program, which generates what is commonly called the "deficiency payment".[2] The deficiency payment is designed to provide an income supplement to the farmer by insuring an adequate price for his crop. In this program, the farmer must plant a crop. The deficiency payment is determined by multiplying the number of acres planted (not harvested) by the farmer times the established historical yield (not actual yield) for that farm land times the difference between the national average market price for the crop and a "target price" for that same crop. If the price of the crop doesn't reach the target price, the farmer then gets the deficiency payment up to a maximum amount as set by the program. The deficiency payment is not tied to the farmer's actual yield. The deficiency payment will not be changed if a particular farmer's yield is larger or smaller than the government's established historical yield. Nor is the deficiency payment in any way linked to "sealing". Except as previously noted, to get the "sealing profit", the farmer must participate in this third program. But the reverse is not true, and the farmer does not have to "seal" to participate in this third program. The farmer will receive the deficiency payment regardless of whether he harvests or sells the harvested crop. For example, he could fail to harvest the crop or he could harvest the crop and keep and use it and still receive the deficiency payment.

■ Having determined the nature or basis of deficiency payments, the next step is to determine whether deficiency payments are "proceeds" within the definition of Section 9–306 of the Uniform Commercial Code. Section 9–306 of the Uniform Commercial Code as adopted in Illinois (Section 9–306, Ch. 26, Ill.Rev.Stat.) defines "proceeds" as being "whatever is received upon the sale, exchange, collection, or other disposition of the collateral". In *In re Schmaling, supra*, the court had before it the issue of whether a PIK payment was "proceeds". After first noting Section 9–306 required a sale, exchange, collection or other disposition of the collateral for there to be "proceeds", the court went on to hold the PIK payments were not "proceeds", as

---

1. This Court on two previous occasions has considered issues involving claims to the "sealing profits". In *In re George*, 62 B.R. 671, this Court held the "sealing profit" was proceeds where the crop was disposed of through the CCC. In *In re Settles*, 69 B.R. 634 (Bkrtcy.C.D.Ill.1987), this Court held that where the debtor used the crop to reduce the debt to the FmHA and then participated in the program with a substituted crop that the "sealing profits" arising from the substituted crops would not constitute proceeds.

2. This program also generates a "diversion payment", which is not involved in this litigation. A diversion payment is determined by multiplying the number of acres removed from production by the established historical yield (not actual yield) for that portion of the land.

no crops were planted and there were no crops which could be disposed of and give rise to "proceeds". The Trustee would have this Court broadly apply *In re Schmaling* by holding a government farm subsidy payment, regardless of its nature, can be claimed as security only where the creditor's security agreement and financing statement specifically refer to it. This Court does not agree this is the result required by *In re Schmaling*. This Court's reading of *In re Schmaling* is that for a government farm subsidy payment to be considered "proceeds", three conditions must be present: First, a crop must be planted; second, there is a disposition of the crop; and third, the entitlement which the secured creditor is claiming must have been received in connection with that disposition.

▮ In the context of a deficiency payment, the first condition is met—i.e. a crop must be planted. The payment is tied to a planted crop. However, neither the second nor the third conditions are met. The payment is in no way dependent upon a sale, exchange or other disposition, nor does it flow from a sale, exchange or other disposition. The payment is the result of a contract with the federal government to provide an income supplement to the farmer. The payment will be made regardless of whether the crop is the object of a "sale, exchange, collection, or other disposition". It will be made even if the the crop is never harvested, or if harvested, if the farmer keeps and uses the crop. Furthermore, the payment is calculated on an estimated, not an actual, yield. As stated by the court in *In re SMS, Inc.*, 32 UCC Rep.Serv. 1631; 15 B.R. 496 (Bkrtcy.D.Kan.1981), the term "proceeds" means "whatever is *substituted* for the original collateral". (Emphasis added) Accordingly, a creditor has a security interest in the crop and whatever is received for the crop upon its sale, exchange, collection or other disposition. There has to be a sale or other disposition of the crop in order for something to be received in its place. In this case the deficiency payment would have been received regardless of whether there was a sale or other disposition. Therefore, it cannot be said that it was received as a substitute for a disposed-of crop. The foregoing analysis leads this Court to the conclusion that deficiency payments are not proceeds under Section 9–306 of the Uniform Commercial Code.

Other courts have considered the issue of whether government farm subsidy payments can be claimed as "proceeds". In chronological order, the first case was *In re Munger, supra,* wherein the court found that payments under the Federal Government's Sugar Beet Abandonment Program were "proceeds". Although the court in that case does not make this Court's analysis the basis of its opinion, this Court's result is consistent with the result in *In re Munger, supra,* for in that case the farmer had planted a sugar beet crop and there was a disposition through the abandonment, and the subsidy was paid as a result of the abandonment.

The next case is *In re Nivens*, 22 B.R. 287 (Bkrtcy.N.D.Tex.1982) where the bankruptcy court held a deficiency payment was "proceeds". That case, decided before *In re Schmaling, supra,* was based in part upon an expansive reading of the term "proceeds" and a presumed intent on behalf of the parties to include such payments as proceeds. That case was further based upon the concept there would be a disposition of the crop, with monies received, and that deficiency payments are monies which the government pays to make up the difference between the amount of money actually received for the crop and that amount which the government has determined that a particular farmer should receive for that crop, and therefore it is logical to conclude deficiency payments are a substitute for crops. The conceptual basis of that case is flawed, for although there will be a sale or other disposition of the crop in most farm situations, there is no requirement that such occur in order to receive the payment. Nor is the payment based on the difference between the price received for that crop and the price determined by the government. It is based on historical yields and national average price.

In *In re Kruse,* 35 B.R. 958 (Bkrtcy.D. Kan.1983) the court held that a subsidy to a farmer not to plant a crop is not "proceeds". The result in *Kruse* is consistent with *In re Schmaling, supra,* as is *In re Mattick,* 45 B.R. 615 (Bkrtcy.D.Minn.1985) where the bankruptcy court also held that PIK payments are not "proceeds".

In *In re Bechtold,* 54 B.R. 318 (Bkrtcy.D. Minn.1985) the farmer participated in a milk diversion program under which the cattle were sold for slaughter with the proceeds being paid to the secured creditor. In addition, the farmer received a diversion payment for milk that was not produced. In holding the diversion payment was not "proceeds" that court reasoned the diversion payment was not a substitute for milk because the cows had been slaughtered and dead cows could not produce milk for sale or other disposition.

Relying on *In re Munger, supra,* and *In re Nivens, supra, In re Norfleet Brothers Farms,* Adv. No. 285–0087 (Bkrtcy. C.D.Ill.1986), also held that deficiency payments were "proceeds".

The next case to be decided was *In re Schmaling, supra.* It is first noted that the court had before it the question of whether PIK payments were "proceeds" and not the question of whether deficiency payments were "proceeds". At first reading one might be led to the conclusion that court's opinion approved of the result in *In re Nivens, supra.* However, for two reasons, this Court does not come to that conclusion. First, such a conclusion would be inconsistent with a reading of that opinion to require a planting and a disposition of a crop. The court in *In re Schmaling, supra,* stated:

> "For something to be 'proceeds' of crops, ... *it must be received* upon their 'sale, exchange, collection or other disposition'." (Our emphasis added.)

Moreover, the court held that the security interest was strictly limited to the collateral described in the security agreement

and that the plain language of the security agreement could not be overridden by either "the federal government's intent in managing its agricultural program or the broad economics of the transaction." Second, in *In re Nivens, supra,* the court had before it the issue of whether deficiency payments and disaster payments [3] were "proceeds" of crops, and in *In re Schmaling, supra,* the court cites *Nivens* in the context of the disaster relief payment without mentioning deficiency payments.

The final three cases were decided after *In re Schmaling, supra.* In *In re Weyland,* 63 B.R. 854 (Bkrtcy.E.D.Wis.1986), the bankruptcy court, relying on *Schmaling,* found that a payment under a Dairy Termination Program was not "proceeds". In *In re Sumner,* 3 UCC Rep.Serv.2d, 282; 69 B.R. 758 (Bkrtcy.D.Ore.1986), the bankruptcy court, relying on *In re Kruse, supra,* held deficiency payments are "proceeds". The court in *Sumner* does not discuss *Schmaling,* nor does it discuss Section 9–306 of the Uniform Commercial Code. In *In re Kingsley,* 3 UCC Rep. Serv.2d 1927; 73 B.R. 767 (Bkrtcy.D.N.D. 1987), the bankruptcy court, relying on a district court holding that a security interest in crops and the products thereof attaches to government farm program payments which had reversed the bankruptcy court's previous ruling that PIK payments were not subject to a security interest covering crops and products thereof, held deficiency and diversion payments were "proceeds".

This Court realizes that of the reported cases, it is the first court to hold that deficiency payments are not "proceeds" under Section 9–306 of the Uniform Commercial Code. However, this Court is of the view it is obligated to apply what it perceives to be the analysis utilized by the Seventh Circuit Court of Appeals in *In re Schmaling, supra,* to the particular facts of this case.

---

**3.** The disaster payments were the result of a disaster which occurred during the crop year which prevented the yield from being as great as it would have been had the disaster not

occurred. The *Nivens* court concluded the disaster payments were a substitute for proceeds of a crop which would have been received had low yields not occurred.

■ The Trustee raised a second basis for attacking the payment as a preference. He contends that pursuant to federal statute (16 U.S.C. Sec. 590(g) ) and the regulation promulgated pursuant thereto (7 C.F.R. Sec. 709) the defendant could take a security interest in the deficiency payments only if the loan was made to enable the debtors to produce the crop and perfection of the security interest was completed by a filing with the Agricultural Stabilization and Conservation Service Office for the county in which the debtors' farm was located, and that the defendant's perfection pursuant to the Uniform Commercial Code was ineffective. The effects of this particular federal statute and regulation were considered in *In re Bechtold, supra,* which held the security interest did not attach to the diversion payment because there had not been compliance with this federal law, and in *In re Sunberg,* 729 F.2d 561 (8th Cir.1984), *In re Nivens, supra,* and *In re Kingsley, supra,* all of which considered and rejected arguments similar to the one made by the Trustee in this case. This Court accepts the reasoning and the holdings in the latter three cases, and concludes that the defendant did not have to comply with the federal statute and the regulations promulgated thereto, in order to claim a security interest in the deficiency payments.

IT IS, THEREFORE, ORDERED that the Trustee be and is hereby entitled to recover the preferential payment of $4,479.00 plus interest from the date of receipt of the preference, and costs, from the PEOPLES NATIONAL BANK OF KEWANEE.

This Opinion and Order is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.