**In re OTTO FARMS, INC., Debtor.**

**No. 99–72764.**

United States Bankruptcy Court, C.D. Illinois.

April 27, 2000.

John S. Narmont, Springfield, IL, for debtor.

Barry M. Barash, Galesburg, IL, Keith A. Luymes, Galva, IL, for Sun Ag.

Michael D. Clark, Peoria, IL, Chapter 12 Trustee.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

The issue before the Court is whether Sun Ag has a valid security interest in certain loan deficiency payments which the

Debtor received post-petition pursuant to a government farm program.

The Debtor, Otto Farms, Inc., had a customer-supplier relationship with Sun Ag, Inc., wherein Sun Ag provided the Debtor with crop inputs from 1995 through 1999. The Debtor did not apply all the crop proceeds in the years prior to 1999 to the debt owed to Sun Ag and, on August 12, 1998, Sun Ag obtained a judgment against the Debtor in the amount of $128,-135.09.

On May 1, 1999, the Debtor signed a Purchase Money Security Agreement with Sun Ag. The consideration for the agreement was the provision of the 1999 crop inputs by Sun Ag. The Debtor granted Sun Ag a security interest in the following collateral:

1. All crops which are or become growing within one year from date on real estate owned of record by Opal Stahly, Forrest G. Kaufman, Richard Kohler, Audrey Baum, Loren Otto, Mercer Turner–Greg Otto, and Helen O. Webb Living Trust, as more completely described in the 3 page Exhibit A attached, and the products of all such crops;

2. All farm supplies of Debtor;

3. All accounts of Debtor arising from the sale of products of farm supplies;

4. All general intangibles, including government payments, insurance proceeds and the like; and

Collectively referred to as "collateral" now owned or hereafter acquired by Debtor, including all proceeds of any collateral.

This agreement secures all obligations, direct or indirect, absolute or contingent, due or to become due, now or hereafter arising.

Sun Ag perfected its security interest in the above-referenced collateral by filing a financing statement with the Illinois Secretary of State. The financing statement covers the following property:

All crops including but not limited to corn, soybeans, and other to be grown, presently growing, or hereafter to be grown; and all harvested crops, including but not limited to corn, soybeans and other and all products of crops, including but not limited to products of corn, soybeans and other; whether now owned or hereafter acquired; Also all farm supplies, all general intangibles including government payments, insurance proceeds and the like; all accounts arising from the sale of farm supplies.

The Debtor filed its petition pursuant to Chapter 12 of the Bankruptcy Code on August 17, 1999. The Debtor harvested its crop following the filing of the petition. After the harvest, the Debtor filed an application for loan deficiency payments ("LDPs") with the United States Department of Agriculture.

Sun Ag claims a security interest in the Debtor's crops, the crop proceeds, and the LDPs. The Debtor does not dispute Sun Ag's lien on the crops or the proceed of the crops. However, the Debtor claims that Sun Ag is not entitled to the LDPs.

LDPs are payments earned in times of depressed commodity prices. They are intended to help make up the difference between current prices and the Commodity Credit Corporation ("CCC") loan rates on corn, soybeans, wheat, and grain sorghum. A LDP is issued based on an amount equal to the difference between the loan rate and the applicable day's posted county rate. LDPs are made to producers eligible for a commodity loan who agree to forego the loan in return for a payment. LDPs are made per bushel of harvested crop, not on estimated yields. Therefore, a crop must be harvested before it is eligible for a LDP. Applications for LDPs cannot be filed for crops still in the field. Further, the request for the LDP must be made before the producer loses beneficial interest in the crop.

A pamphlet prepared by the Montgomery County Farm Services Administration gives the following example of a LDP:

Producer A does not have a corn loan and notices that the posted county price

for corn is $1.70. She also notices that this is $.17 below the county loan rate of $1.87. Producer A is able to apply for a loan deficiency payment on that date and receive a payment of $.17 per bushel. This is a cash payment and once this LDP request is filed, these bushels become ineligible for a 9 month CCC loan. The LDP request must be filed prior to losing beneficial interest.

Sun Ag claims a security interest in the LDPs as proceeds of crops and as government payments. The Debtor argues that Sun Ag's security interest was terminated by 11 U.S.C. § 552, which provides in pertinent part as follows:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b)(1) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, or profits of such property, then such security interest extends to such proceeds, product, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

The Debtor argues that its rights in the LDPs were not acquired until after the commencement of the case, and, therefore, the LDPs are not subject to Sun Ag's prepetition security interest.

Both parties rely on *In re Schmaling*, 783 F.2d 680 (7th Cir.1986) and *In re Kruger*, 78 B.R. 538 (Bankr.C.D.Ill.1987).

Both cases are factually distinguishable from the case at bar because they involved different programs and the creditors in those cases did not have security interests in government program payments or general intangibles. The issue in *Schmaling* was whether corn received under the government payment-in-kind ("PIK") program constituted crop "proceeds" under the Illinois Commercial Code. The Court specifically noted that "[t]he bank could presumably have acquired an interest in PIK revenues either by referring to government entitlements directly or by including a reference to general intangibles or to contract rights." 783 F.2d at 684. The issue in *Kruger* was whether government deficiency payments which the debtor received when his crop did not sell for a targeted price were proceeds of the crop. The deficiency payment was available to the farmer whether or not he harvested or sold the harvested crop. The payment was calculated on an estimated rather than actual yield. 78 B.R. at 541. The creditor's security agreement was limited to the corn crop and proceeds from the crop; it did not refer to deficiency payments. 78 B.R. at 539. In the case at bar, crops were planted and harvested. Moreover, the security agreement and financing statement specifically refer to "general intangibles, including government payments."

Under Illinois law, a creditor acquires a security interest in personal property when the following requirements are met:

(a) the collateral is in the possession of the secured party pursuant to agreement, the collateral is investment property and the secured party has control pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral . . . .

(b) value has been given; and

(c) the debtor has acquired rights in the collateral.

810 ILCS 5/9–203(1)(a) –(c).

In this proceeding, the Debtor gave Sun Ag a signed security agreement

covering "general intangibles, including government payments." This is an adequate description of the LDPs. *See In re Endicott,* 239 B.R. 529, 531 (Bankr. E.D.Ark.1999); *In re Waters,* 90 B.R. 946 (Bankr.N.D.Iowa 1988); *In re Sunberg,* 35 B.R. 777 (Bankr.S.D.Iowa 1983), *aff'd* 729 F.2d 561 (8th Cir.1984). Moreover, substantial value, i.e. the 1999 crop inputs, was given to secure the indebtedness. Thus, the question is whether the Debtor had sufficient rights in the LDPs for the security interest of Sun Ag to attach pursuant to § 9–203. More specifically, the issue is whether Sun Ag's security interest attached pre-petition or post-petition. If the LDPs are proceeds of post-petition value, then § 552 cuts off Sun Ag's lien. However, if the LDPs are proceeds of pre-petition value, then Sun Ag's lien is valid. *See In re SRJ Enterprises, Inc.,* 150 B.R. 933, 935–36 (Bankr.N.D.Ill.1993).

The Debtor argues that the LDPs are post-petition value because the Debtor did not have a right to the LDPs until after the crops were harvested, and this event occurred post-petition. The Debtor further argues that in order to receive the LDPs, an application had to be submitted to the Farm Services Administration, and the Debtor submitted his application post-petition. Accordingly, the Debtor maintains that the LDPs are free and clear of Sun Ag's lien.

Sun Ag argues that the Debtor had a legally enforceable right to the LDPs pre-petition because the LDP program was in place pre-petition. Sun Ag maintains that this was a sufficient right under the Illinois Commercial Code for its security interest to attach.

The Court agrees with Sun Ag. The Debtor was eligible to participate in the LDP program prior to the commencement of the bankruptcy case. The Debtor's eligibility and right to the LDPs arose by the Debtor being eligible for a mandatory assistance loan and agreeing to forego such a loan in return for the deficiency payments. These events arose pre-petition.

*In re Lesmeister,* 242 B.R. 920, 926 (Bankr.D.N.D.1999) reached a similar conclusion with regard to payments under the Crop Loss Disaster Assistance Program:

It is enough for attachment if the events giving rise to a claim or right of action have come into existence ... They were farmers who had suffered a loss from drought and had a right to payments under the program the moment the Crop Loss Disaster Assistance Program became effective. This right was a proprietary interest sufficient for attachment to occur at that time. Hence, Ag Acceptance's security interest in government payments attached on that date.

In this proceeding, it is undisputed that the LDP program was in place pre-petition. The Debtor's right to participate in the LDP program was a sufficient proprietary interest for attachment to occur pre-petition.

Relying on the unpublished opinion of *In re Bates,* Bankr.5–88–287 (Bankr.Minn. 1990), the *Lesmeister* court compared the right to disaster payments to a right of action for damages not yet put into suit. 242 B.R. at 924. The *Lesmeister* court found that the Debtor's right to a disaster payment was "best characterized as a pre-petition right of action—an unliquidated chose in action." 242 B.R. at 925. Here, the Debtors had a pre-petition right to participate in the LDP program.

The Court's conclusion that Sun Ag's security interest in the LDPs attached pre-petition is buttressed by the particular facts in this case. Due to the Debtor's failure in previous years to apply all crop proceeds to the Sun Ag debt, the security agreement was customized. In addition to specifically describing government payments as collateral, the security agreement also provided in paragraph 7.02 as follows:

If debtor does not so sell the crops, then Sun Ag shall be authorized to do so in its name and for its own account. Sun Ag is also authorized in the alternative to store the crops(,) receive the warehouse receipts and obtain any type of

crop loan available as if it were the producer of the crops. If market prices are below posted FSA prices during the period from October 1, 1999 through January 10, 2000, then debtor or Sun Ag may store the grain and deliver warehouse receipts or other evidences of the crop to the Farm Service Agency or any other federal agency for any crop loans available that will maximize the total return on the crop.

The security agreement further provided in paragraph 7.04:

Debtor shall promptly enroll in any and all Farm Credit Services Agency farm programs to obtain any subsidy payments available. Debtor shall contemporaneously with the execution of this agreement immediately obtain and sign all assignment forms, such that any payments due under any United States government program administered through the Farm Services Agency or any other federal agency are assigned to Sun Ag.

Paragraph 7.05 provided in part as follows:

Harvesting of the crops shall be conducted and completed as directed and prescribed by Sun Ag.

Thus, the Debtor was obligated under the security agreement to harvest the crops and apply for any subsidy payments available under the various farm programs. The choices of whether to harvest the crop or whether to apply for farm program payments were not options available to the Debtor. The Debtor ceded these decisions to Sun Ag in the security agreement. Under these circumstances, the LDPs are clearly proceeds of pre-petition value.

For the foregoing reasons, the Court finds that Sun Ag, Inc. has a perfected security interest in the loan deficiency payments. The Court further finds that the loan deficiency payments should be turned over to Sun Ag, Inc.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.