**In re James R. KLAUS, Jr., Deborah M. Klaus, Debtors.**

No. 99–73540.

United States Bankruptcy Court, C.D. Illinois.

April 27, 2000.

John S. Narmont, Springfield, IL, for debtors.

Mariann Pogge, Springfield, IL, for Farmers & Merchants State Bank of Virden.

. Michael D. Clark, Peoria, IL, Chapter 12 Trustee.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

The issue before the Court is whether Farmers and Merchants State Bank has a valid security interest in certain loan deficiency payments which the Debtors received post-petition pursuant to a government farm program.

The Debtors, James and Deborah Klaus, executed a Security Agreement on April 18, 1997, wherein they granted Farmers and Merchants State Bank of Virden a security interest in equipment, farm products, accounts, general intangibles, and government payments and programs. The Security Agreement specifically describes part of the Bank's collateral as follows:

Government Payments and Programs: All payments, accounts, general intangibles, or other benefits (including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance payments, diversion payments, and conservation reserve payments) in which I now have and in the future may have any rights or interest and which arise under or as a result of any preexisting, current or future Federal or state governmental program (including, but not limited to, all programs administered by the Commodity Credit Corporation and the ASCS).

The secured property includes, but is not limited by, the following: ALL FARM PRODUCTS AND CROPS NOW GROWING OR HEREAFTER TO BE GROWN, INCLUDING ALL ENTITLEMENTS AND PAYMENTS FROM ANY STATE OR FEDERAL FARM PROGRAM, CROP INSURANCE OF ANY TYPE, ACCOUNTS AND GENERAL INTANGIBLES, WHETHER NOW EXISTING OR HEREAFTER ARISING.

The Bank perfected its security interest by filing UCC financing statements in 1997 in Macoupin County where the Debtors reside and farm and in Montgomery County where they also farm. The financing statements cover the following property:

All equipment, accounts, instruments, documents, chattel paper and general intangibles, whether now existing or after acquired.

All farm products and crops now growing of hereafter to be grown, including all entitlements and payments from any state or federal farm program, crop insurance of any type, accounts and general intangibles, whether now existing or hereafter arising.

The Debtors filed their petition pursuant to Chapter 12 of the Bankruptcy Code on October 5, 1999. Prior to the filing of the petition, the Debtors planted and harvested their 1999 crop. After the filing of their bankruptcy petition, the Debtors applied for loan deficiency payments ("LDPs") with the United States Department of Agriculture. They applied for LDPs from Montgomery County on October 27, 1999, and from Macoupin County on November 16, 1999. They received approximately $4,200 in LDPs from Montgomery County and approximately $1,500 from Macoupin County.

The Bank filed a Motion to Lift Stay on November 3, 1999. After a hearing on the Motion, the Court entered an Interim Order which reserved the issue of the Bank's interest in the LDPs.

LDPs are payments earned in times of depressed commodity prices. They are intended to help make up the difference between current prices and the Commodity Credit Corporation ("CCC") loan rates on corn, soybeans, wheat, and grain sorghum. A LDP is issued based on an amount equal to the difference between the loan rate and the applicable day's posted county rate. LDPs are made to producers eligible for a commodity loan who agree to forego the loan in return for a payment. LDPs are made per bushel of harvested crop, not on estimated yields.

Therefore, a crop must be harvested before it is eligible for a LDP. Applications for LDPs cannot be filed for crops still in the field. Further, the request for the LDP must be made before the producer loses beneficial interest in the crop.

A pamphlet prepared by the Montgomery County Farm Services Administration gives the following example of a LDP:

Producer A does not have a corn loan and notices that the posted county price for corn is $1.70. She also notices that this is $.17 below the county loan rate of $1.87. Producer A is able to apply for a loan deficiency payment on that date and receive a payment of $.17 per bushel. This is a cash payment and once this LDP request is filed, these bushels become ineligible for a 9 month CCC loan. The LDP request must be filed prior to losing beneficial interest.

The Bank claims a security interest in the LDPs as proceeds of crops. The Debtors argue that the Bank's security interest was terminated by 11 U.S.C. § 552, which provides in pertinent part as follows:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b)(1) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, or profits of such property, then such security interest extends to such proceeds, product, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law,

except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

The Debtors argue that their rights in the LDPs were not acquired until after the commencement of the case, and, therefore, the LDPs are not subject to the Bank's pre-petition security interest.

Both parties rely on *In re Schmaling,* 783 F.2d 680 (7th Cir.1986) and *In re Kruger,* 78 B.R. 538 (Bankr.C.D.Ill.1987). Both cases are factually distinguishable from the case at bar because they involved different programs and the creditors in those cases did not have security interests in government program payments or general intangibles. The issue in *Schmaling* was whether corn received under the government payment-in-kind ("PIK") program constituted crop "proceeds" under the Illinois Commercial Code. The Court specifically noted that "[t]he bank could presumably have acquired an interest in PIK revenues either by referring to government entitlements directly or by including a reference to general intangibles or to contract rights." 783 F.2d at 684. The issue in *Kruger* was whether government deficiency payments which the debtor received when his crop did not sell for a targeted price were proceeds of the crop. The deficiency payment was available to the farmer whether or not he harvested or sold the harvested crop. The payment was calculated on an estimated rather than actual yield. 78 B.R. at 541. The creditor's security agreement was limited to the corn crop and proceeds from the crop; it did not refer to deficiency payments. 78 B.R. at 539. In the case at bar, crops were planted and harvested. Moreover, the security agreement and financing statement specifically refer to "deficiency payments."

Under Illinois law, a creditor acquires a security interest in personal property when the following requirements are met:

(a) the collateral is in the possession of the secured party pursuant to agreement, the collateral is investment property and the secured party has control

pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral. . . .

(b) value has been given; and

(c) the debtor has acquired rights in the collateral.

810 ILCS 5/9–203(1)(a) –(c).

In this proceeding, the Debtors gave the bank a signed security agreement covering "Government Payments and Programs." The Agreement specifically refers to "deficiency payments." This is an adequate description of the LDPS. *See In re Endicott,* 239 B.R. 529, 531 (Bankr. E.D.Ark.1999); *In re Waters,* 90 B.R. 946 (Bankr.N.D.Iowa 1988); *In re Sunberg,* 35 B.R. 777 (Bankr.S.D.Iowa 1983), *aff'd* 729 F.2d 561 (8th Cir.1984). It is undisputed that value was given to secure the indebtedness. Thus, the question is whether the Debtors had sufficient rights in the LDPs for the security interest of the Bank to attach pursuant to § 9–203. More specifically, the issue is whether the Bank's security interest attached pre-petition or post-petition. If the LDPs are proceeds of post-petition value, then § 552 cuts off the Bank's lien. However, if the LDPs are proceeds of pre-petition value, then the Bank's lien is valid. *See In re SRJ Enterprises, Inc.,* 150 B.R. 933, 935–36 (Bankr. N.D.Ill.1993).

The Debtors argue that the LDPs are post-petition value because the Debtors did not have a right to the LDPs until after an application was submitted to the Farm Services Administration. The Debtors submitted their application post-petition. Accordingly, the Debtors maintain that the LDPs are free and clear of the Bank's lien.

The Bank argues that the Debtors had a legally enforceable right to the LDPs pre-petition because the LDP program was in place pre-petition. The Bank maintains that this was a sufficient right under the Illinois Commercial Code for its security interest to attach.

The Court agrees with the Bank. The Debtors were eligible to participate in the LDP program prior to the commencement of the bankruptcy case. The Debtors' eligibility and right to the LDPs arose by the Debtors being eligible for a mandatory assistance loan and agreeing to forego such a loan in return for the deficiency payments. These events arose pre-petition.

*In re Lesmeister*, 242 B.R. 920, 926 (Bankr.D.N.D.1999) reached a similar conclusion with regard to payments under the Crop Loss Disaster Assistance Program:

> It is enough for attachment if the events giving rise to a claim or right of action have come into existence ... They were farmers who had suffered a loss from drought and had a right to payments under the program the moment the Crop Loss Disaster Assistance Program became effective. This right was a proprietary interest sufficient for attachment to occur at that time. Hence, Ag Acceptance's security interest in government payments attached on that date.

In this proceeding, it is undisputed that the LDP program was in place pre-petition. The Debtor's right to participate in the LDP program was a sufficient proprietary interest for attachment to occur pre-petition.

Relying on the unpublished opinion of *In re Bates*, Bankr.5–88–287 (Bankr.Minn. 1990), the *Lesmeister* court compared the right to disaster payments to a right of action for damages not yet put into suit. 242 B.R. at 924. The *Lesmeister* court found that the Debtor's right to a disaster payment was "best characterized as a pre-petition right of action—an unliquidated chose in action." 242 B.R. at 925. Here, the LDP program was in place, the Debtors were eligible to participate in the program, and the crops were planted and harvested. All of these events occurred pre-petition. All that remained to be done post-petition was the filing of the application for the LDP payment. The Court agrees with *Lesmeister* and *Bates* that this is akin to a cause of action which occurred pre-petition but for which suit was not filed until post-petition. Such an action would unquestionably be an asset of the bankruptcy estate. *Lawrence v. Jackson Mack Sales, Inc.*, 837 F.Supp. 771, 779 (S.D.Miss.1992), *aff'd* 42 F.3d 642 (5th Cir. 1994). Similarly, the Court finds that the Debtor had a sufficient interest in the LDPs for the Bank's security interest to attach pre-petition. The application for the LDP need not be formally filed in order for the Debtors to have an interest in them; their rights to the LDPs accrued pre-petition.

■ The Debtors further argue that the Bank's lien is unperfected because the Bank did not submit the FSA assignment form necessary to secure payment in its name. This argument has been rejected by every court which has considered it. *J. Catton Farms, Inc. v. First National Bank of Chicago*, 779 F.2d 1242, 1245 (7th Cir.1985); *In re Endicott, supra*, 239 B.R. at 531; *In re Sunberg, supra*, 729 F.2d at 562; *In re Nivens*, 22 B.R. 287, 291 (Bankr.N.D.Tex.1982). This Court also rejects that argument.

For the foregoing reasons, the Court finds that the Bank has a perfected security interest in the loan deficiency payments. Therefore, the automatic stay should be lifted and the loan deficiency payments turned over to Farmers and Merchants State Bank.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.