**In re John CLARK, Jr., Alma C. Clark, Debtors.**

**Bankruptcy No. 87 B 05180 J.**

United States Bankruptcy Court, D. Colorado.

Dec. 18, 1987.

William M. Bass, Pendleton & Sabian, P.C., Denver, Colo., the standing chapter 12 trustee.

Joseph Dworkin, Dworkin & Shively, P.C., Denver, Colo., for debtors.

Stephen Rider, Rider and Wolf, Aurora, for Federal Land Bank of Wichita.

John A. O'Brien, Jr., Moye, Giles, O'Keefe, Vermeire & Gorrell, Denver, for Farmers State Bank of Yuma.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER comes before the Court on the Debtors' Motion to Confirm their Chapter 12 Plan.

On May 4, 1987, the Debtors applied to the U.S. Department of Agriculture, Agriculture Stabilization and Conservation Service ("ASCS"), Commodity Credit Corporation ("CCC"), to place certain of their farmland in the Conservation Reserve Program ("CRP"), under 7 C.F.R. § 704.1, *et seq.* On May 5, 1987, the Debtors filed their Chapter 12 bankruptcy petition, and on May 19, 1987, the CCC accepted the contract with the Debtors. See Creditor Exhibit H.

Under the CRP contract, the government leases the land from the farmer and agrees to pay a sum certain each year for ten years as rental, in this case $7,200.00 per year. In return the farmer agrees not to use the land for any commercial purpose and to plan and maintain a suitable vegetative ground cover to control soil erosion. In addition, the farmer agrees to reduce the aggregate total of crop acreage bases, allotments, and quotas for his farm, i.e. to reduce the basis for which the farmer will be paid under other crop subsidy programs of ASCS. *See,* para. 3E of Appendix to Form CRP-1-Creditor Exhibit H.

In addition to the annual rental payments, the Debtor/farmers herein received a "bonus" of $35,381.00 for their reduction

of the base, allotment, or quota for corn. See CRP–113 Addendum–Creditor Exhibit H.

Under 7 C.F.R. § 704.16 the ASCS may make payment to the farmer in cash, in-kind, or in commodity certificates or in any combination thereof in accordance with 7 C.F.R. Part 770. Here, the Debtors received "generic" Commodity Certificates. See Creditor Exhibits J, K, L, and M, totaling $35,381.00.

The Debtors' Amended Chapter 12 Plan provides for allocation of rents to the Federal Land Bank of Wichita. The Farmers State Bank of Yuma has objected to the plan, claiming that the $35,381.00 payment should come to them by virtue of their first perfected security interest in the Debtor's crops and crop proceeds.

The issue to be decided by this Court is the nature of the $35,381.00 payment—is it "rent" or "proceeds" of crops.

7 C.F.R. § 770.1 et seq. governs commodity certificates and payments in kind of all programs administered by the CCC or the ASCS. Both the CRP and the PIK Program are administered by these bodies. The CRP regulations (7 C.F.R. § 704.1 et seq.) do not refer to any reduction in the acreage base. This aspect of the CRP is covered under 7 C.F.R. § 713.98 (7 C.F.R. § 713.1 et seq. are the umbrella regulations covering feed, grain, wheat and related programs). It is under this regulation that the farmer must reduce his acreage base, acreage allotment or marketing quota by the same proportion as the ratio of the cropland taken out of production under the CRP contract to the total cropland on the farm. As stated above, this reduces the amount of acreage to which the farmer can claim entitlement under other ASCS programs for a period of 10 years.

As far as this Court can determine, the CRP or ASCS payments are technically PIK payments, being governed by the same regulation. However, the outcome of our analysis is the same whether the payment is called CRP, ASCS or PIK.

The Bankruptcy Court of Kansas in the case of In re Kruse, 35 B.R. 958 (Bankr. Kan.1983) reviewed three cases which had previously ruled on the nature of PIK payments.

1. Pombo v. Ulrich (In re Munger), 495 F.2d 511, 14 UCC Rep. 790 (9th Cir.1974) found that PIK payments made for abandonment of growing crops were proceeds.

2. First State Bank of Abernathy v. Holder (In re Nivens) 22 B.R. 287, 34 UCC Rep. 1711 (Bankr.N.D.Tex.1982) held that deficiency and low yield/disaster payments were proceeds of crops "which logically would have been received had the disaster or low yields not occurred."

3. In re Sunberg, 35 B.R. 777 (Bankr.S. D.Iowa 1983) found that payments received pursuant to an agreement not to plant certain acreage was a general intangible.

The Kansas court then summarized the above cases as follows:

To summarize, agricultural entitlement payments made to a debtor when the debtor agrees to abandon a planted crop, low yield/disaster payments made to supplement a planted crop, and subsidy payments made to supplement a planted crop are all proceeds of the planted crop under the Uniform Commercial Code and subject to a creditor's security interest in the crops out of which the payments arose. See In re Munger, supra; In re Nivens, supra. A diversion agreement between the farmer and the Department of Agriculture in which the farmer agrees to turn under or abandon a planted crop and/or not plant certain acreage, is a general intangible as is the farmer's right to receive payments under the diversion agreement. The payments themselves are proceeds of the general intangible and subject to a creditor's security interest in the general intangible. In re Sunberg, supra.

Thus, we can draw a distinction between abandonment, deficiency/disaster and subsidy payments as opposed to payments made to divert a farmer's land to conservation purposes. The Debtors in this case

before us converted certain acreage to conservation purposes.

Section 4–9–306 C.R.S. states "Proceeds" includes whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. In the case of the $35,381.00 payment, there never was a crop to sell, exchange, collect, or dispose of, so that the payment cannot be termed "proceeds" under the Colorado U.C.C.

Any decision regarding this issue cannot be made without reference to the actual documents of the CRP contract. The Addendum to the CRP contract refers at all times to the $35,381.00 payment as a "rental payment." The introductory paragraph states "... CCC agrees to pay such owners and operators a *rental payment* as set forth in this Addendum for the year specified in item 6 *in addition to the rental payment* specified in the CRP Contract." (emphasis added) Item 6 of the Addendum states "Year of *Additional Rental* Payment." (emph. added) Item 3 refers to "bonus" but it is clear from the language of the contract, that this bonus is to be in the form of an additional annual rental to be paid for the year specified.

In conclusion, this Court finds that the $35,381.00 payment is rental and not proceeds. It is, therefore,

ORDERED that the Debtors' Amended Chapter 12 Plan allocation of rents to the Federal Land Bank is valid and the Debtors' motion to confirm is hereby granted.