In re Scotty Lee SCHNEIDER and Anna Lucille Schneider, Debtors.

Scotty Lee SCHNEIDER & Anna Lucille Schneider, Appellants,

v.

Edward J. NAZAR, Trustee, Appellee.

No. 87–1291.

United States Court of Appeals, Tenth Circuit.

Dec. 29, 1988.

Royce E. Wallace (Barbara J. Coen, with him on the brief), Wallace, Dewey & Zimmerman, Wichita, Kan., for appellants.

Laurie B. Williams, (Martin R. Ufford and Edward J. Nazar, on the brief), Redmond, Redmond, O'Brien & Nazar, Wichita, Kan., for appellee.

Before McKAY, LOGAN and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Appellants, Scotty Lee Schneider and Anna Lucille Schneider (debtors), appeal the decision of the district court holding that the monetary proceeds of federal payments-in-kind (PIK) constitute property of the bankruptcy estate, rather than property of the debtors. We reverse.

### I.

In 1984, appellant Scotty Lee Schneider (debtor) participated in a crop reduction and diversion program administered by the Commodity Credit Corporation (CCC). *See* 7 C.F.R. pt. 770 (1985) (applicable program requirements for 1984 crop year). The PIK program is an artificial inducement for producers to reduce acreage or divert land that would normally be used for the pro-

duction and harvest of certain program crops. In return for non-production and other services, the producer receives a like quantity of the commodity that would have been produced, but for participation in the program. *Security Nat'l Bank & Trust Co. v. Case (In re George)*, 85 B.R. 133, 137–38 (Bkrtcy.D.Kan.1988) (pre–1986 PIK program discussed); *In re Kruse*, 35 B.R. 958, 960–62 (Bkrtcy.D.Kan.1983) (percentage-of-base PIK program discussed). One of the purposes of the program is to elevate and at least stabilize the price of the harvested commodity.

The debtor leased farm land from his father under a share-crop arrangement which extended from August 1983 to July 1984, from planting through harvest. The debtor and his father, as producer and operator of the land, respectively, filed a joint request for an eligibility determination to participate in the PIK entitlement program before the bankruptcy petition was filed. The debtor was to receive a ⅔ share of the wheat furnished by the program and his father was to receive a ⅓ share. The government did not approve the request of the debtor and his father until after the petition was filed.[1] Thereafter, the debtor and his father agreed to participate in the program and the government approved their participation.

The bankruptcy court characterized the PIK entitlements as "an inseparable part of rights established by debtor in his prepetition farming operations" and concluded that the entitlements were property of the estate "whether the payments are characterized as proceeds, rents, profits or general intangibles." Rec. vol. I, doc. 36 at 4. The district court agreed, but also held that the debtors were entitled to be reimbursed for any post-petition advances or services

1. The bankruptcy court developed a chronology of the debtor's participation in the PIK program:

| 1984 | Event |
| --- | --- |
| March 12 | Request for PIK eligibility determination. |
| [March 27 | Filing of instant Chapter 7 petition.] |
| April 16 | Government's determination of eligibility. |
| May 3 | Debtor's election to participate. |
| May 17 | Government's approval of participation. |
| May 29 | Debtor's certification and report of acreage. |
| June 19 | Government's payment of $1,110 in entitlements. |
| December 17 | Government's payment of $2,301 in entitlements. |

Rec. vol. I, doc. 36 at 3.

necessary to receive the PIK. *Id.* doc. 7 at 4. The district court reasoned that the right to proceeds from the entitlement required some post-petition performance by the debtor; accordingly, the debtor was entitled to reimbursement for the value of any post-petition advances or necessary services. *Id.*

## II.

■ We review the bankruptcy court's decision in the same manner as the district court. Findings of fact are not to be set aside unless clearly erroneous; conclusions of law are reviewed *de novo. In re Blehm Land & Cattle Co.*, 859 F.2d 137, 138–39 (10th Cir.1988). In this case, the facts as found by the bankruptcy court are not disputed. The legal conclusion for our review, the characterization of proceeds of a PIK contract executed subsequent to the bankruptcy petition, is reviewed *de novo.* Applying the *de novo* standard, we reverse and remand the case to the district court for entry of judgment in favor of the debtors.

The bankruptcy estate generally consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This includes "proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). The debtors' argument on appeal is that the PIK amounts do not constitute property of the bankruptcy estate because they resulted from a post-petition contract involving post-petition services of the debtor. Debtors also argue that the trustee never took any steps to perform the contract which required, at the very least, the acquiescence of the debtor's father. The trustee responds that the entitlement payments are proceeds of the wheat crop and should not be characterized as post-petition payments for services under § 541(a)(6).

■ In deciding what constitutes property under § 541, we are mindful of the trustee's interest in reaching all assets of the debtor contrasted with the debtor's interest in accumulating wealth post-petition. *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966). In this instance, however, there is an established body of law concerning agricultural entitlement payments to guide us. Agricultural entitlement payments which result from the actual disposition of a planted crop are proceeds of that crop. *In re Schmaling*, 783 F.2d 680, 682–83 (7th Cir. 1986); *Pombo v. Ulrich (In re Munger)*, 495 F.2d 511, 512 (9th Cir.1974); *Barash v. Peoples Nat'l Bank of Kewanee (In re Kruger)*, 78 B.R. 538, 541 (Bkrtcy.C.D.Ill. 1987); *In re Kruse*, 35 B.R. at 965–66; *First State Bank of Abernathy v. Holder (In re Nivens)*, 22 B.R. 287, 292 (Bkrtcy.N. D.Tex.1982). Agricultural entitlement payments based on an agreement not to plant crops arise from accounts or general intangibles. *In re Schmaling*, 783 F.2d at 683; *In re Sunberg*, 35 B.R. 777, 781–82 (Bkrtcy.S.D.Iowa 1983), *aff'd*, 729 F.2d 561 (8th Cir.1984) (general intangibles); *In re George*, 85 B.R. at 145 (contract rights or general intangibles); *In re Clark*, 82 B.R. 131, 132–33 (Brktcy.D.Colo.1987); *In re Kruger*, 78 B.R. at 541; *In re Binning*, 45 B.R. 9, 12 (Bkrtcy.S.D.Ohio 1984) (accounts); *but see In re Judkins*, 41 B.R. 369 (Bankr.M.D.Tenn.1984) (proceeds); *In re Lee*, 35 B.R. 663, 666 (Bkrtcy.N.D.Ohio 1983) (same). In *Schneider v. Caprock Ind., Inc. (In re Lions Farms, Inc.)*, 54 B.R. 241, 244–45 (Bkrtcy.D.Kan.1985) the Kansas bankruptcy court characterized unpaid PIK diversion payments as rights under an executory contract which are properly classified as accounts under Kan.Stat. Ann. § 84–9–106 (1983) and the 1983 Kansas Comment to that section. We agree.

■ Here, the contract is one in which the debtor and the producer were exchanging services in exchange for the government providing payments-in-kind. The debtor and his father (operator and producer) were required to limit the acres of wheat planted to harvest to no more than 99.3 acres, and to divert 39.7 acres to approved conservation uses. They were required to protect the diverted land by prac-

ticing good soil conservation techniques. This included establishing a ground cover and taking needed measures to control erosion, insects, weeds and rodents. Absent special conditions, the diverted land could not be grazed or mechanically harvested for a set period after the agreement. In return, the government agreed to pay the operator and producer in-kind.

At the time the bankruptcy petition was filed, the appropriate government representative had not signed the contract. The regulations governing the program specifically provided that the contract between the government and the operator and producer must impose certain obligations on the government. 7 C.F.R. § 770.3 (1985). In the context of this case, we think the government undertook these obligations with respect to the operator and the producer at the time the government signed the contract approving participation. The clear import of the applicable regulations is that an executed contract is a prerequisite to participation. *See, e.g.,* 7 C.F.R. §§ 770.-1,[2] 770.2–770.5 (obligations of parties and contracting procedures). Moreover, the contract required future services of the operator and producer after the filing of the bankruptcy petition. These services were furnished by the debtor and his father, without compensation by the bankruptcy trustee. Merely because the amount of the PIK was determined with reference to the 1984 crop does not mean that the entitlement agreement is so rooted in the bankruptcy past as to make it an asset of the estate. *Cf. In re Schmaling,* 783 F.2d at 683. Rather, because the agreement was not executed by the government as of the date the petition was filed, the agreement is not part of the debtor's estate.

Our holding is narrow. The proceeds of the payments-in-kind belong to the debtors under § 541(a)(6) because PIK contract formation had not been completed as of the date of the petition, and there is no suggestion that the sequence of events was planned to defeat a trustee's claim. We acknowledge that in many instances the debtor will have performed sufficient acts pre-petition to make the payments-in-kind part of the bankruptcy estate.

REVERSED AND REMANDED.

**2.** 7 C.F.R. § 770.1(a) (1985) provided:
(a) The Department of Agriculture, through the Commodity Credit Corporation, will enter into contracts with operators and producers who agree to reduce the acreage normally planted to a commodity specified in § 770.1(b) and devote an equivalent acreage to an approved conserving use in return for compensation in the form of the commodity for which the planted acreage is reduced. This part describes the general terms and conditions of these contracts and the procedures under which the Department will enter into such contracts.
(b) This special program is available throughout the United States, including Puerto Rico, for the 1984 and subsequent crops of wheat, corn, grain sorghum, barley, oats, upland cotton, extra long staple cotton, or rice as announced by the Secretary of Agriculture (the "Secretary").