**FEDERAL DEPOSIT INSURANCE CORPORATION, As Receiver of The Hayesville Savings Bank, Appellee,**

v.

**Larry L. HARTWIG and Jill J. Hartwig, et al., Appellants.**

**No. 89–1453.**

Supreme Court of Iowa.

Nov. 21, 1990.

John Jellineck of Brown Law Office, Fairfield, for appellants.

G. Mark Rice and Michael R. Nelson of Adams, Howe & Zoss, P.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, CARTER, and NEUMAN, JJ.

NEUMAN, Justice.

The parties to this farm foreclosure action each claim the right to payments made by the government through the Conservation Reserve Program (CRP). *See generally* 16 U.S.C. §§ 3831–36 (1988). The district court decided that the payments constitute rent payable to the receiver within the meaning of the "rents and profits" clause of the mortgages and deed of trust executed by the parties. The mortgagors have appealed and we now affirm.

Plaintiff Federal Deposit Insurance Corporation (FDIC) is the successor in interest to the Hayesville Savings Bank. Defendants Larry and Jill Hartwig gave the bank two mortgages and a deed of trust on farmland owned by them to secure indebtedness of approximately $400,000. The mortgages and deed of trust each provide that, in the event of default, a receiver shall be appointed to take possession of the property and collect the "rents and profits accruing therefrom."

Following default by the Hartwigs in 1987, the bank sought judgment on the notes and foreclosure of the mortgages and deed of trust. Partial summary judgment was entered in favor of the bank, and the property was eventually purchased at sheriff's sale by the FDIC. A substantial deficiency remained after sale.

Before foreclosure, and later while the property was in receivership, the Hartwigs enrolled a total of 326.7 acres of the mortgaged farmland in the Conservation Reserve Program. This conservation program, administered by the Secretary of Agriculture, is designed to "assist owners and operators of highly erodible cropland in conserving and improving the soil and water resources of their farms or ranches." 16 U.S.C. § 3831(a). To be eligible, a farmer must agree to take erodible acreage out of commercial production for ten years and implement approved conservation practices necessary to establish permanent vegetative cover including grasses, legumes, trees, and shrubs. 16 U.S.C. § 3832; 7 C.F.R. § 704.10(a), .12(a) (1990). In return, the government contractually agrees to pay the farmer annual "rental payment[s]

... to compensate such participant for placing eligible cropland in the CRP." 7 C.F.R. § 704.2(a)(2); *see also* 16 U.S.C. § 3834.

In July 1989, the receiver sought direction from the district court concerning distribution of two CRP payments due in October 1989. Because the Hartwigs—with the consent of the receiver—had taken the acreage out of production, there were no other "rents or profits" being generated for the 1989 crop year. Noting that the enabling legislation made repeated reference to CRP "rental payments," the district court ruled that the FDIC was entitled to the proceeds less sums expended by the Hartwigs to prepare the land for participation in the program. It is from this ruling that the Hartwigs have appealed.

■ The parties agree that the sole question presented for review is whether CRP payments constitute "rent" within the meaning of the "rents and profits" clause of a mortgage. If so, the payments inure to the benefit of the receiver; if not, they rightfully belong to the mortgagors. The parties also concede that this court has historically defined the term "rents and profits" very broadly:

> The phrase "rents, issues and profits" as distinguished from the land itself refers to the products of the land, the annual rentals, the income derived therefrom, whether in money or in products. It has been said that "to cultivate and have the use of the lands is to receive the rents and profits." Where one by lease agrees to pay a certain sum for the right to cultivate and use the land, the sum so stipulated is rent, and represents the landlord's share in the issues and profits of the land, and where the lease provides for a share of the crop, the share of the crop represents the landlord's portion of the issues and profits derived from the use and cultivation of the land. Part of it may be paid in cash and part of it in crops or products. The word "profits" as used in the phrase "rents, issues and profits" is synonymous with "rents."

*Equitable Life Ins. Co. of Iowa v. Brown*, 220 Iowa 585, 590, 262 N.W. 124, 127 (1935) (citations omitted).

The Hartwigs attempt to get around this broad definition of rent by characterizing the CRP contract as a personal obligation running between the government and the producer independent of cultivation of the mortgaged land. We note that several bankruptcy courts used this rationale to hold that payments coming from an earlier government program known as PIK (Payment in Kind) are not rent. *See Matter of Butz*, 86 B.R. 595, 598 (S.D.Iowa 1988); *In re Liebe*, 41 B.R. 965, 970 (N.D.Iowa 1984); *see also In re Waters*, 90 B.R. 946, 969 (N.D.Iowa 1988) (distinguishing PIK from CRP on this ground); *In re Ratliff*, 79 B.R. 930, 932 (D.Colo.1987) (same). Under the PIK program, the government compensated qualified farmers for agreeing not to produce grain crops by giving them certificates redeemable for commodities in an amount calculated to represent the established yield on the acreage enrolled in the program. Characterizing these entitlements as "qualitatively different" from crops grown from the soil which are "intimately connected to the real estate," the court in *Liebe*, for example, held that PIK payments "should not be classified as rents or profits of the land." *Liebe*, 41 B.R. at 970.

The bankruptcy courts for the northern and southern districts of Iowa are split on the question of whether this same rationale should apply to CRP payments. In *Matter of Butz*, 86 B.R. at 598, the court for the southern district concluded that CRP contracts—like PIK contracts—are sufficiently "attenuated" from the land to disqualify them from classification as "rents and profits." *Id.* Reaching an opposite conclusion, the court for the northern district focused on the long-term nature of the contract, the required compliance with agricultural conservation practices, and the fact that the CRP legislation repeatedly refers to the compensation as "rental payments." *In re Waters*, 90 B.R. at 969–70.

On balance, we find the reasoning of *Waters* more persuasive. Unlike the one-year contracts for "PIK bushels earned," *see Liebe*, 41 B.R. at 970, the CRP contracts obligate the program participants (as

well as their successors and assigns) to engage in specified planting and soil conservation practices for ten years. Given this fact, we think the CRP contracts "run with the land," rather than exist independent from it. *See Waters,* 90 B.R. at 970. Likewise, because the contract requires diversion of the property to a specific use, other courts have concluded that the obligation created thereby is in the nature of a lease. *In re Harvie,* 84 B.R. 197, 199 (D.Colo.1988); *In re Clark,* 82 B.R. 131, 132–33 (D.Colo.1987); *In re Ratliff,* 79 B.R. at 932. *But see In re Koerkenmeier,* 107 B.R. 195, 197 (W.D.Mo.1989) (CRP contract not lease under Missouri law because it does not convey real property).

The characterization of CRP payments as rent is also supported by the repeated description of CRP compensation as "rental payments" in the legislation. *See, e.g.,* 16 U.S.C. § 3832(a)(5)(A) (providing for forfeiture of "rental payments" upon violation of contract); 16 U.S.C. § 3834(a) and (b) (obligating Secretary of Agriculture to "annual rental payments" upon specified terms and conditions); 16 U.S.C. § 3834(f) (cataloging limitations on "rental payments"); *see also* Black's Law Dictionary 1166 (5th ed. 1979) (defining rent as "[c]onsideration paid for use or occupation of property").

Enrollment in the CRP clearly limits a farmer's use of land; compensation is provided by the government for that loss of use. Though the government does not assume physical control of the property, it effectively controls it by contract. In exchange, the farmer benefits—not through profit generated by commercial production—but through payments received for cultivation of approved vegetative cover designed to control erosion. In the words of the district court, "the CRP payments for non-use of the land are derived from use of the land." We conclude that the payment flowing from the CRP contract was properly characterized as rent by the district court. We affirm.

AFFIRMED.