In re Leonard ZWEYGARDT and Bernice Zweygardt, Ruben Zweygardt and Betty Zweygardt, Willard Zweygardt and Donna Zweygardt, Link Zweygardt and Jerri Zweygardt, Larry Schultz and Carolyn Schultz, Debtors.

Civ. Nos. 90–4049–SAC, 90–4052–SAC, 90–4053–SAC and 90–4059–SAC.

Bankruptcy Nos. 87–40632–11, 87–40634–11, 87–40644–11, 87–41259–11 and 87–41517–12.

United States District Court, D. Kansas.

Dec. 31, 1992.

Charles T. Engel, Cosgrove, Webb & Oman, Lauren M. Lowry, Woner, Glenn, Reeder, Lowry & Girard, Topeka, KS, for F.D.I.C.

Gary H. Hanson, Stumbo, Hanson & Hendricks, Topeka, KS, for debtors in No. 90–4049–SAC.

Calvin J. Karlin, Barber, Emerson, Springer, Zinn & Murray, Lawrence, KS, for Farm Credit Services fka Federal Land Bank of Wichita.

Charles T. Engel, Cosgrove, Webb & Oman, Topeka, KS, for Diversified Financial Planners, Inc.

Gary H. Hanson, Stumbo, Hanson & Hendricks, Topeka, KS, for debtors, appellees in No. 90–CV–4053 SAC.

## MEMORANDUM AND ORDER

CROW, District Judge.

These consolidated cases come before the court on appeal and cross-appeal from decisions rendered by the bankruptcy court. Each of the debtors had issued promissory notes to the Citizens States Bank of St. Francis, Kansas. The Federal Deposit Insurance Corporation (FDIC)[1], as receiver for the Citizens State Bank, claims that it held prepetition security interests in the proceeds of the Conservation Reserve Program (CRP) contracts of each debtor.[2]

Each of the debtors were also indebted to the Federal Land Bank. Each of the mortgages executed in favor of the Federal Land Bank provide that "[m]ortgagor hereby transfers, assigns, sets over and conveys to mortgagee all rents...." In resolving the disputes between each of the debtors and the Federal Land Bank, each of the debtors and the Federal Land Bank agreed to a secured value to be paid to the Federal Land Bank. The debtors and the Federal Land Bank are essentially aligned together against the FDIC in these consolidated cases.

The primary issue decided by the bankruptcy court was whether the FDIC had a valid security interest in each of the debtor's CRP payments. At the time of Judge Pusateri's opinion, each of the debtors apparently intended to keep his or her land enrolled in the CRP program and use the proceeds to fund his or her reorganization effort.[3] The bankruptcy court held that the CRP contracts are "executory and that the payments are rental payments as stated by the statutes and regulations." As such, the FDIC's Uniform Commercial Code (UCC) filings "did not perfect its interest as required for interests in land, so it is not secured by the CRP contract."[4] The bankruptcy court also concluded that the values of the CRP payments were properly reflected in the value of the real property.

The FDIC appeals the bankruptcy court's decision. First, the FDIC contends that the bankruptcy court erred in determining that the CRP payments were "rents" instead of finding that the CRP payments are proceeds of contract rights which are subject to the U.C.C. (i.e., interests in real property vs. personal property). The FDIC contends that its U.C.C. filings provided it with a perfected security interest in the CRP payments. Second, the FDIC basically contends that it did not receive the value

1. Diversified Financial Planner, Inc. (DFPI), assignee of the FDIC, appeals in Case No. 90–4053–SAC. DFPI and the FDIC have filed a joint brief. For simplicity, the court will, unless otherwise noted, refer to the both parties as the FDIC.

2. The objectives of the Conservation Reserve Program are set forth in the Code of Federal Regulations:

   (1) Reduce water and wind erosion,
   (2) Protect our long-term capability to produce food and fiber,
   (3) Reduce sedimentation,
   (4) Improve water quality,
   (5) Create better habitat for fish and wildlife through improved food and cover,
   (6) Curb production of surplus commodities, and
   (7) Provide needed income support for farmers.
7 C.F.R. § 704.1 (1992).

3. Since that time, the Schultzes have withdrawn from the CRP program. The debtors, and the Federal Land Bank agrees, that the fact that the

Schultzes have withdrawn from the CRP program renders that portion of this consolidated appeal moot. The FDIC and DFPI do not appear to respond to that argument. The court therefore finds the FDIC and DFPI's appeal (Case No. 90–4053–SAC) and the Federal Land Bank's cross-appeal (Case No. 90–4059–SAC) are moot and dismisses the FDIC and DFPI's appeal and the Federal Land Bank's cross-appeal in those cases on that basis. The court's disposition of those cases, however, would essentially be identical to the court's disposition of the Zweygardts' cases.

4. K.S.A. 84–9–104 provides in pertinent part:
   Transactions excluded from this article. This article does not apply

    .    .    .    .    .

   (j) except to the extent that provision is made for fixtures in section 84–9–213, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder ...
*See Garnett State Savings Bank v. Tush,* 232 Kan. 447, 452, 657 P.2d 508 (1983).

of the CRP "contract proceeds" in the plans of reorganization confirmed by the bankruptcy court.

The Federal Land Bank cross-appeals in case Nos. 90–4052–SAC and 90–4059–SAC, arguing that the court need not reach the issue of whether the CRP payments are rents or proceeds of contract rights. The Federal Land Bank argues that the FDIC's objections were filed out of time in two of the cases, that the FDIC does not have a security agreement covering CRP payments in four of the cases and that the FDIC did not perfect its security interest in any of these cases as the FDIC filed its financing statements with the Cheyenne County Register of Deeds, rather than filing with the Kansas Secretary of State, as required.

In the event the court finds it necessary to consider the nature of the CRP payments, the Federal Land Bank contends that the bankruptcy court correctly concluded that the CRP payments are properly characterized as "rent." The Federal Land Bank also contends that the second issue raised by the FDIC is "difficult to determine" and is a "non-issue." The Federal Land Bank contends that the FDIC has waived any objection and that the bankruptcy court properly included the value of the CRP in the land.

The Zweygardts and the Schultzes make several of the same arguments advanced by the Federal Land Bank. In addition, the Zweygardts and the Schultzes argue that the FDIC should be equitably estopped from objecting to Leonard and Ruben's reorganization plans and the way in which their plans treated the CRP payments. The appellees also contend that Ruben and the FDIC reached a complete settlement of FDIC's claims which did not include any claim of a security interest in the CRP lease payments. The appellees also contend that the issues in the Schultz case are moot.

Having considered the voluminous briefs and numerous exhibits of the parties, the court file, the bankruptcy court's order and the applicable law, the court is now prepared to rule.

## Standard of Review

On appeal from the bankruptcy court, the district court sits as an appellate court. *See* 28 U.S.C. § 1334(a). Findings of fact are not to be set aside unless clearly erroneous; conclusions of law are reviewed *de novo. Virginia Beach Federal Sav. and Loan Ass'n v. Wood,* 901 F.2d 849, 851 (10th Cir.1990); *In re Schneider,* 864 F.2d 683, 865 (10th Cir.1988); *see* Bankruptcy Rules 7052 and 8013. "Just as the court of appeals may not conduct an evidentiary hearing for a bankruptcy appeal, so too a district court may not conduct such hearing when it is acting in its capacity as an appellate court. In a bankruptcy appeal, a district court may alter or amend its judgment pursuant to Fed.R.Civ.P. 59(e), but may not conduct a hearing to take additional testimony or other evidence." *In re Branding Iron Motel, Inc.,* 798 F.2d 396, 399 (10th Cir.1986).

When reviewing factual findings, an appellate court is not to weigh the evidence or reverse the finding because it would have decided the case differently. *Id.* at 400. The Tenth Circuit has held in the bankruptcy context that "[t]he bankruptcy court's findings should not be disturbed absent the most cogent reasons appearing in the record." *Id.* (quoting *In re Reid,* 757 F.2d 230, 233–234, (10th Cir. 1985)). A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Hall v. Vance,* 887 F.2d 1041, 1043 (10th Cir.1989).

## Summary of Each Case

In analyzing this case, the court has constructed a chart summarizing the significant facts of each case.

| Debtors | Chapter | Debt to FDIC | CRP Agreement |
|---------|---------|--------------|---------------|
| Leonard and Bernice Zweygardt | 11 | $617,188.39 [5] | $ 3,550 per year until 1996 |
| Ruben and Betty Zweygardt | 11 | $618,033.58 [6] | $54,824 per year until 1996 |
| Willard and Donna Zweygardt | 11 | $801,722.21 [7] | $37,100 per year until 1996 |
| Link and Jerri Zweygardt | 11 | $424,034.24 [8] | $15,750 per year until 1996 |
| Larry and Carolyn Schultz | 12 | $125,342.46 [9] | $2,115 per year until 1996 |

### Arguments of the Parties

Before reaching the issue of whether CRP payments are properly characterized as rents, the court will briefly comment on the other arguments raised in opposition to the FDIC's claims. First, the debtors and the Federal Land Bank argue that the FDIC's objection was out of time. As the debtors and the Federal Land Bank suggest, the FDIC's claims against some of the estates did not specifically identify its purported interest to CRP payments until late in the bankruptcy proceedings. Because the bankruptcy court did not decide this issue, this court merely notes that the debtors and the Federal Land Bank have raised serious questions about the adequacy and timeliness of the FDIC's claims to the CRP payments.

Second, the FDIC does not even claim a security agreement covering CRP payments in two of the cases.[10] In addition, in two of the other cases, neither Betty Zweygardt nor Carolyn Schultz signed the financing statement on file. In light of that fact, the court is uncertain why the FDIC believes that those financing statements would be effective to perfect its claimed interest in the CRP payments in those cases. *See* K.S.A. 84–9–203(1)(a); 2 James J. White and Robert S. Summers, *Uniform Commercial Code* § 24–18, p. 371 (3rd ed. 1988) ("We have found no case in which a court found a financing statement without the debtor's signature to be effective.").

Third, even if the FDIC could overcome those obstacles, it would still not be perfected in any of the cases. At the relevant time, the FDIC would had to have filed the financing statements at the Kansas Secretary of State. *See* K.S.A. 84–9–401 (as it existed before 1984).[11] The FDIC filed each of the financing statements in each case at the County Register of Deeds. Even if the FDIC were to convince this court that CRP payments are "contract rights", the FDIC does not appear to have filed its financing statements in the correct place. The court does not believe that the

---

**5.** FDIC claims a security interest in "all accounts relievable, inventory, general intangibles, government program payments, deficiency payments, and contract rights now owned or hereafter acquired." FDIC filed the financing statement in the Cheyenne Co. Register of Deeds.

**6.** FDIC claims a security interest in contract rights and accounts and all proceeds. The debtors deny that any security agreement covering contract right or accounts. The debtors did grant security agreements covering certain crops and livestock. The financing statement was filed in the Cheyenne County Register of Deeds Office. Betty Zweygardt did not sign the financing statement.

**7.** FDIC claims no security interest in contract rights and accounts.

**8.** FDIC does not claim a security interest in contract rights, accounts and proceeds.

**9.** FDIC claims a security interest in all contract rights, account, and proceeds thereof. The agreement was filed with the Cheyenne County, Kansas, Register of Deeds. Diversified Financial Planners, Inc. (DFPI) succeeded to FDIC's interest in the Schultz proceeding only after the Schultz' plan was confirmed, but prior to the bankruptcy court's February 14, 1990, judgment and memorandum of decision was entered.

**10.** "In a bankruptcy proceeding, property interests are determined on the basis of state law." *In re Wiston XXIV Limited Partnership,* 147 B.R. 575 (D.Kan.1992).

**11.** The parties agree that K.S.A. 84–9–401 as it existed before 1984 is the applicable statute.

CRP payments are properly characterized as "farm products." *See K.S.A.* 84–9–109.

■ In response to this argument, the FDIC contends that even if it filed the financing statements in the wrong place, two of the financing statements were signed by the debtors (Leonard Zweygardt and Ruben Zweygardt) and that the FDIC's filing is good against a person with knowledge. The debtors correctly respond that they are debtors in possession and as such they can avoid the FDIC's purported liens. *See* 11 U.S.C. § 544; 11 U.S.C. § 1107; *In re Wiston XXIV Limited Partnership,* 147 B.R. 575 (D.Kan.1992) ("Under § 544, the bankruptcy trustee or debtor-in-possession may set aside any security interest not perfected prior to the filing of the bankruptcy petition, and state law determines whether and when the interest has been perfected."); *In re Waters,* 90 B.R. 946, 967 (Bkrtcy.N.D.Iowa 1988) ("The Debtors, as debtors-in-possession, under Chapter 11 have all the rights of a hypothetical lien creditor and thus would be able to avoid any unperfected liens."). Under these circumstances, the court is uncertain why the FDIC believes that its security interests entitles it to the proceeds of the CRP payments in any of these cases.

The debtors and the Federal Land Bank essentially argue that if the FDIC was not perfected, then the court's inquiry should end here. Apparently in response, the FDIC states: "If the court finds that FDIC was not perfected in Leonard and Ruben's CRP contract payments, then in all of the instant cases but for Schultz, FDIC would be an unsecured creditor entitled to receive the value of the CRP payments, *pro-rata,* with other unsecured creditors pursuant to 11 U.S.C. § 1129(a)." Unfortunately, this sentence is the extent of the FDIC's analysis of this issue. This analysis falls somewhat short of the court's expectation that a party advancing an argument will explain its position within the framework of relevant statutes and case law. In any event,

the court concludes that the bankruptcy court's determination that CRP payments are rent is not in error, and therefore it is unnecessary for the court to resolve that particular issue.

### CRP Payments

The bankruptcy court concluded that CRP payments are properly characterized as "rents" rather than contract rights. Each party suggests that weight of authority supports their own respective position.

The courts have struggled with the proper characterization of CRP payments. Several courts, including the bankruptcy court in this case, have characterized CRP payments as rents. *See In re Ratliff,* 79 B.R. 930, 931–32 (Bankr.D.Colo.1987) (CRP payments are in the nature of "rent"); *In re Clark,* 82 B.R. 131 (Bankr.D.Colo.1987) (CRP payments are rents, not proceeds); *In re Harvie,* 84 B.R. 197, 199–200 (Bankr.D.Colo.1988) (CRP contract payment made to the debtor is in the nature of a rental payment); *In re Waters,* 90 B.R. at 967 (CRP bonus and contract payments are in the nature of rental or lease payments); *F.D.I.C. v. Hartwig,* 463 N.W.2d 2, 4–5 (Iowa 1990) (CRP payments properly characterized at rent).[12] In comparison, other courts have expressly concluded that CRP payments are not rents. *See In re Koerkenmeier,* 107 B.R. 195, 196–198 (Bankr.W.D.Mo.1989) ("[R]ather than a lease, a CRP contract is nothing more than a *contract not to place farm land into production* between Debtors and ASCS."); *In re Butz,* 86 B.R. 595, 598 (Bankr.S.D.Iowa 1988) (CRP payments are not "rents and profits" of the land), *aff'd in part, rev'd on other grounds,* No. 88–366–A, 1989 U.S. Dist. LEXIS 14691 (S.D. Iowa March 21, 1989); *In re Holte,* 83 B.R. 647, 649 (Bankr.D.Minn.1988) (court comments that debtor's right to payment under the CRP contract was a contract right or general intangible); *In re Cloverleaf Farmer's Co-op,* 114 B.R. 1010 (Bankr.D.S.D.1990)

---

**12.** In *Hartwig,* the FDIC held a deed of trust entitling it to take possession of property mortgaged by the debtors and collect the "rents and profits therefrom." The FDIC successfully argued that it was entitled to the CRP payments as those payments were properly characterized as rental payments. In reaching that decision, the Supreme Court of Iowa considered the conflicting decisions in *In re Butz* and *In re Waters.* The court found the *Waters* more persuasive, concluding that the CRP contracts "run with the land." 463 N.W.2d at 4–5.

(SBA's security interest in Chapter 12 debtor's "rents and profits" was insufficiently descriptive to perfect security interest in CRP payments received by debtor).

Courts which have found CRP payments to be rents have primarily relied on the following arguments:

1. The statutes promulgated by Congress and the pertinent regulations refer to the CRP payments as "rents." *See,* *e.g.,* 16 U.S.C. §§ 3832(5)(2), 3832(5)(B), 3832(6)(A), 3832(6)(B), 3833(2), 3834(a)(2), 3834(c)(1), 3834(f)(1), 3834(f)(3); 7 C.F.R. § 704.2(a)(2), 704.2(a)(4), 704.13(a)(2), 704.16. Similarly, the CRP agreements themselves refer to the CRP payments as "rental rates."

2. Generally, state law defines rents and profits very broadly. Therefore, the CRP payments fall within the definition of rents.

3. PIK (payment in kind) payments are based upon an agreement not to plant crops are properly classified as accounts under K.S.A. § 84-9-106. *In re Schneider,* 864 F.2d 683, 685 (10th Cir. 1988). Under PIK program the government compensates qualified farmers for agreeing not to produce grain crops by giving them certificates redeemable for commodities in an amount calculated to represent the established yield of the acreage enrolled in the program. PIK payments are different in nature from CRP payments, and therefore it is proper to characterize CRP payments as rent.

4. The long-term nature of the CRP agreements, 10 years, is qualitatively different from the short term nature of PIK programs.

5. CRP program requires ten year compliance with certain agricultural conservation practices.

6. CRP obligates program participants, their successors and assigns, to engage in specified planting and soil conservation practice for ten years—thus CRP plans "run with the land" rather than exist independent from it. If title to the land changes during the term of the CRP

lease, the new owner, not the original owner, is entitled to the lease payments.

7. Under the CRP program, land is diverted for a specific use. Enrollment in a CRP program clearly limits a farmer's use of the land. Although the government does not assume possession of the property, it effectively controls the property by contract.

8. "[T]he CRP payments for non-use of the land are derived from use of the land." *Hartwig,* 463 N.W.2d at 5.

■ In comparison, these are the arguments raised by courts (and the FDIC in this case) against finding that CRP payments are rent:

1. Looking only to language in the statutes, regulations and agreements elevates form over substance. Labeling a contract a lease does not, in-and-of-itself, create a lessor-lessee relationship.

2. The duration of a contract does not change its nature.

3. In some states, a tenant has exclusive legal possession of the premises. The CRP agreement does not convey property from debtors to ASCS nor did it transfer to ASCS those possessory rights which are generally concomitant with a lease transaction. Therefore, because the CRP agreement does not confer the rights usually associated with a "lease" it is not a lease. Instead, the CRP agreement is merely a contract between two parties that requires the farmer to take certain portions of his farm out of production.

4. Unpaid PIK diversion payments are properly categorized as "accounts." Agricultural entitlement payments which result from the actual disposition of a planted crop are proceeds of the crop. Agricultural entitlement payments based upon an agreement not to plant crops arise from accounts or general intangibles. *See Schneider,* 864 F.2d at 685.

5. Annual rental payment is defined by the regulations, indicating the phrase does not have its common meaning.[13]

---

**13.** The court is unpersuaded that defining the terms used in the regulations necessarily as-

cribes some unusual meaning as the regulations define many words which would normally have

6. Under the CRP agreement, the land owner is responsible for the care and condition of the property.[14]

7. If the landowner breaches the CRP agreement, annual payments must be refunded in their entirety, even if there is a breach in the 8th year; this is not like other rental agreements.[15]

■ Having considered all of the arguments raised by the parties and the relevant case law, the court concludes that the CRP payments are properly characterized as rents. This conclusion is buttressed by a plain reading of the CRP agreements, the relevant statutes and regulations, and an analysis of the nature of the agreements under Kansas law.

While contrary decisions reached in other courts in other jurisdictions are not unreasonable, those decisions must be evaluated in light of relevant state law. In *Koerkenmeier*, the court focused on the specific requirements under Missouri law for determining whether a landlord-tenant relationship agreement exists. In reaching the conclusion that the CRP agreements are contracts between two parties that requires the farmer to take certain portion of his farm out of production, the court noted that under Missouri law a landlord-tenant relationship does not exist unless there is (1) reversion in the landlord; (2) creation of an estate in the tenant; (3) transfer of exclusive possession and control of the premises to the tenant; and (4) a contract between the parties. 107 B.R. at 197. The court held that under Missouri law "the CRP contract does not qualify as a lease because it does not contain a conveyance of property from Debtors to ASCS, nor does it transfer to ASCS those possessory rights which are concomitant with a lease transaction."

While the FDIC contends that *Koerkenmeier* was correctly decided, it has failed to demonstrate to the court that the law of Kansas also imposes a similar "exclusivity"

requirement. In contrast, the debtors and the Federal Land Bank contend that Kansas does not have an "exclusive use" requirement in determining whether an agreement is a lease. The debtors and the Federal Land Bank contend there are many examples of non-exclusivity in Kansas lease agreements: combined grazing leases in Kansas involving multiple tenants of the same pasture none of whom have exclusive use or possession; leases of common shopping areas in shopping centers and apartment complexes; mineral leases; certain crop share leases. In addition, the CRP agreements do confer certain rights of access and control over the use of the property. The FDIC did not adequately respond to these arguments by the debtors and the Federal Land Bank.

In Kansas, "[t]he feudal concept that a lease of real estate is primarily a conveyance or transfer of an interest in land has given way to the more realistic view that it is essentially a contract containing reciprocal rights and obligations on the part of the lessor." *Steele v. Latimer,* 214 Kan. 329, Syl. ¶ 6, 521 P.2d 304 (1974).

A lease is both an executory contract and a present conveyance. The lessor is one who grants a lease. The lessee is one to whom a lease is made. A tenant is one who has the temporary use and occupancy of the leased property belonging to another. The duration and other terms of the occupancy are usually defined by the lease agreement, while the parties are placed in the relationship of landlord and tenant.

To determine whether an instrument is a lease, or creates a relation other than that of lessor and lessee, the intention of the parties, as ascertained from the instrument itself, will govern. The fundamental rule in the construction of the agreement is to ascertain the intent of the parties, and in such construction the courts look to the language employed,

a common meaning similar to their defined meaning.

14. The debtors and the Federal Land Bank argue that this is true under traditional landlord/tenant agreements.

15. The debtors and the Federal Land Bank argue that these provisions are simply liquidated damages provisions.

the subject matter and the surrounding circumstances.

*Misco Industries, Inc. v. Board of Sedgwick County Comm'rs,* 235 Kan. 958, 964, 685 P.2d 866 (1984).

The CRP contracts, while not necessarily typical of landlord-tenant agreements, appear to be in the nature of a lease. The streams of "annual rental payments" appear to be what they purport to be: rents. This result also appears appropriate in light of Kansas law defining the landlord/tenant relationship. As several courts have held, given the long term nature of the CRP plans, the CRP contracts effectively "run with the land" rather than existing independent from the land. *Hartwig,* 463 N.W.2d at 5. In addition, because the contract requires diversion of the property to a specific use the obligation created by the agreement is in the nature of a lease. *Id.*

Turning to the second issue raised by these appeals which addresses the issue of valuation of the CRP plans, the FDIC has not demonstrated under any theory that it is entitled to the rents generated by the CRP agreements. Instead it appears that the Federal Land Bank is entitled to those sums. The court is therefore uncertain why the FDIC complains that the bankruptcy court failed to specifically calculate the value of the CRP plans in each case. In any event, the FDIC has failed to point to any evidence that was presented to the bankruptcy court from which the bankruptcy court could have determined that the CRP agreement has any value separable from the land. Nor does it appear that the bankruptcy court was required to separately itemize the CRP value from the land, as that objection was not properly preserved. The court concludes that the bankruptcy court's decision on valuation of the CRP plans is neither clearly erroneous or contrary to the law.

Given the court's disposition of this issue it is unnecessary for the court to address the other issues raised by the debtors and the Federal Land Bank.

IT IS THEREFORE ORDERED that the DFPI's appeal as assignee of the FDIC in Case No. 90–4053–SAC and the Federal Land Bank's cross-appeal in Case No. 90–4059–SAC are dismissed as moot.

IT IS FURTHER ORDERED that the decisions of the bankruptcy court appealed by the FDIC in Case No. 90–4049–SAC and cross-appealed by the Federal Land Bank in Case No. 90–4052–SAC are affirmed.