**In re George A. ISENBART, Mary J. Isenbart, Debtors.**

No. 99–12768–7.

United States Bankruptcy Court, D. Kansas.

Nov. 14, 2000.

Todd Allison, Klenda, Mitchell, Austerman & Zuercher, L.L.C., Wichita, KS, for debtors.

Eric D. Bruce, Bruce, Bruce & Holt, L.L.C., Wichita, KS, for Stockgrowers.

Mary E. May, Wichita, KS, trustee.

## MEMORANDUM OPINION AND ORDER

JULIE A. ROBINSON, Bankruptcy Judge.

This matter comes before the Court upon the motion for relief from stay filed by Stockgrowers State Bank, and objections filed by the debtors and the trustee. The parties submitted briefs and stipulations, and the Court took the matter under advisement. The Court grants the motion for relief from stay, concluding that Stockgrowers State Bank is entitled to relief, because it has a security interest in CRP payments, which are properly characterized as "accounts," not "rents."

### JURISDICTION

The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(G).

### FINDINGS OF FACT

The parties stipulated to the following facts:

In 1989 and 1996, the debtors signed a series of security agreements granting Stockgrowers State Bank (Stockgrowers) a security interest in, among other things, Conservation Reserve Program (CRP) payments. The financing statement and the statement of continuation reflecting the CRP payments were filed with the Secretary of State. George Isenbart signed Conservation Reserve Program Contracts on March 10, 1996, March 10, 1997, and September 16, 1997.

On July 28, 1999, the debtors filed for bankruptcy under Chapter 7 of the Bankruptcy Code. Stockgrowers filed a motion for relief from stay claiming a valid security interest in all government payments and programs; the trustee and debtors filed objections. On November 17, 1999, the Court, upon the parties' agreement, issued an interim order which temporarily granted Stockgrowers the right to receive and hold the CRP payments. Thus, Stockgrowers has been holding CRP payments, in the amount of $9,419 for the year 1999.

The debtors claim that pre-petition they incurred $2500 in mowing expenses, which remains unpaid. This mowing was done on their land in the CRP and, debtors claim, was reasonable and necessary to maintain compliance with the CRP contract for calendar year 1999. The debtors' statement of mowing expense is dated August 5, 1999.

### CONCLUSIONS OF LAW

█ Stockgrowers contends that it is the holder of claims against the debtors in the amount of $156,233.98, secured by a valid security interest in the debtors' CRP payments, and is entitled to relief from the stay because its interest is not adequately protected. Section 362(d)(1) provides that relief from the stay shall be granted "for cause, including the lack of adequate protection of an interest in property of such party in interest."[1] Stockgrowers must have an interest in the property before relief may be granted under § 362(d)(1).[2] Whether Stockgrowers has a security interest turns on the nature of CRP payments. Stockgrowers' security agreement identifies the collateral as accounts, general intangibles and:

> Government Payments and Programs: All payments, accounts, general intangibles, or other benefits (including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance payments, diversion payments, and conservation reserve payments) in which I now have and in the future may have any rights or interest and which arise under or as a result of any preexisting, current or future Federal or state governmental program (including, but not limited to, all programs administered by the Commodity Credit Corporation and the ASCS).

Stockgrowers filed a financing statement that described its collateral as "... contracts, and all other general intangibles, including but not limited to Government Diversion, Deficiency, & disaster Payments, Payments-in-Kind, & CRP payments ..."

Is the CRP contract a lease, such that the payments are rents? Or is the CRP a contract to perform duties or services, such that the payments are contract rights, accounts, or general intangibles? There is a split of authority on this issue. A District Court opinion in this district, *In re Zweygardt*,[3] concludes that the CRP payments are rents.

In *Zweygardt*, the court recapitulates the arguments in favor of CRP payments being rents or being contract rights.

> Courts which have found CRP payments to be rents have primarily relied on the following arguments:
>
> 1. The statutes promulgated by Congress and the pertinent regulations refer to the CRP payments as "rents." ... Similarly, the CRP agreements themselves refer to the CRP payments as "rental rates."
>
> 2. Generally, state law defines rents and profits very broadly. Therefore, the CRP payments fall within the definition of rents.

---

**1.** 11 U.S.C. § 362(d)(1).

**2.** *See In re Planned Systems, Inc.*, 78 B.R. 852, 860 (Bankr.S.D.Ohio 1987) (holding that a *prima facie* case includes a showing that a valid security interest exists as to which relief from stay is sought).

**3.** 149 B.R. 673 (D.Kan.1992).

3. PIK (payment in kind) payments are based upon an agreement not to plant crops are properly classified as accounts under K.S.A. § 84–9–106. *In re Schneider*, 864 F.2d 683, 685 (10th Cir. 1988). Under PIK program the government compensates qualified farmers for agreeing not to produce grain crops by giving them certificates redeemable for commodities in an amount calculated to represent the established yield of the acreage enrolled in the program. PIK payments are different in nature from CRP payments, and therefore it is proper to characterize CRP payments as rent.

4. The long-term nature of the CRP agreements, 10 years, is qualitatively different from the short term nature of PIK programs.

5. CRP program requires ten year compliance with certain agricultural conservation practices.

6. CRP obligates program participants, their successors and assigns, to engage in specified planting and soil conservation practice for ten years-thus CRP plans "run with the land" rather than exist independent from it. If title to the land changes during the term of the CRP lease, the new owner, not the original owner, is entitled to the lease payments.

7. Under the CRP program, land is diverted for a specific use. Enrollment in a CRP program clearly limits a farmer's use of the land. Although the government does not assume possession of the property, it effectively controls the property by contract.

8. "[T]he CRP payments for non-use of the land are derived from use of the land." *Hartwig*, 463 N.W.2d at 5.

In comparison, these are the arguments raised by courts ... against finding that CRP payments are rent:

1. Looking only to language in the statutes, regulations and agreements elevates form over substance. Labeling a contract a lease does not, in-and-of-itself, create a lessor-lessee relationship.

2. The duration of a contract does not change its nature.

3. In some states, a tenant has exclusive legal possession of the premises. The CRP agreement does not convey property from debtors to ASCS nor did it transfer to ASCS those possessory rights which are generally concomitant with a lease transaction. Therefore, because the CRP agreement does not confer the rights usually associated with a "lease" it is not a lease. Instead, the CRP agreement is merely a contract between two parties that requires the farmer to take certain portions of his farm out of production.

4. Unpaid PIK diversion payments are properly categorized as "accounts." Agricultural entitlement payments which result from the actual disposition of a planted crop are proceeds of the crop. Agricultural entitlement payments based upon an agreement not to plant crops arise from accounts or general intangibles. *See Schneider*, 864 F.2d at 685.

5. Annual rental payment is defined by the regulations, indicating the phrase does not have its common meaning. (Footnote omitted).

6. Under the CRP agreement, the land owner is responsible for the care and condition of the property. (Footnote omitted).

7. If the landowner breaches the CRP agreement, annual payments must be refunded in their entirety, even if there is a breach in the 8th year; this is not like other rental agreements. (Footnote omitted).[4]

■ This Court agrees with the view that the CRP payments are accounts or contract rights, not rents. While the statutes, regulations,[5] or agreements refer to

---

4. *Id.* at 679–80.

5. 7 C.F.R. § 1410.21(b) requires that the government pay the participant in the CRP, "an

the payments as "rent," the Court must determine the substance of the CRP payments by looking beyond the denomination or form.

■ In substance, the CRP contract is not a lease and the payments are not rent. The CRP contract does not confer rights usually associated with a lease. Typically, in a lease, pursuant to landlord/tenant law, the tenant has some possessory right. Even in instances where the tenant need not have exclusive possession, the tenant has at least a right of shared possession. Under the CRP, however, the putative tenant, the government, has no possessory rights—shared or otherwise. The land is in the sole possession of the farmer, the putative landlord.

Nor does the CRP contract confer on the government, as putative tenant, any control over the land. In fact, because the farmer has control of the land, the regulations [6] must direct the farmer to provide the government with access to the land, during the application period or during the contract. But this access is given for a limited purpose: to allow the government to examine records to determine the land classification and erosion rates, and to determine whether the farmer is in compliance with the CRP agreement. Otherwise, the government has no access to the land.

Although the farmer has contractual duties,[7] the government has no control over the land or the exercise of those duties. The mere fact that the CRP con-tract limits or directs the farmer's use of the land, does not endow the government with the type of control inherent to a tenant. Suppose a neighbor contracts with a landowner, to pay the landowner an annual fee for the landowner to engage in erosion control, such that the neighbor's land is benefitted. The neighbor does not control the landowner's land and cannot be characterized as its tenant. Rather, the landowner is in control of his own land, and pursuant to the contract with his neighbor, must perform erosion control on his own land. The payments to the landowner are contract rights, or accounts, not rents.

Furthermore, the analysis that the CRP contracts are like a lease because they "run with the land," is faulty. The CRP contracts do not necessarily run with the land. If during the term of the CRP contract, the owner either loses control or transfers all or part of the land under contract, "and the new owner does not wish to continue the contract," the contract will be terminated.[8] The new owner has 60 days in which to elect whether to become a successor to the existing CRP contract; and if it elects to not continue with the contract, the contract is terminated, and the original participant must refund to the government, all previous CRP payments, among other contractual remedies.[9] On the other hand, the new owner can choose to become a successor to the contract and assume all of the original participant's contractual duties;[10] or with the

annual rental payment in such amounts as may be specified in the CRP contract."

**6.** 7 C.F.R. § 1410.55.

**7.** These duties include: not allowing grazing, harvesting or other commercial use of any crop; implementing a conservation plan; establishing and maintaining vegetative or water cover; complying with noxious weed laws; and weed and pestilence control. 7 C.F.R. § 1410.20(a).

**8.** 7 C.F.R. § 1410.32(f)(1).

**9.** 7 C.F.R. § 1410.51(b) states, "If a participant transfers all or part of the right and interest in, or right to occupancy of, land subject to a CRP contract and the new owner or operator does not become a successor to such contract within 60 days of such transfer, such contract shall be terminated with respect to the affected portion of such land ..."

**10.** 7 C.F.R. § 1410.51(a)(2) states "With respect to the transferred land, if the new owner or operator becomes a successor to the existing CRP contract, the new owner or operator shall assume all obligations under the CRP contract of the previous participant."

government's approval, the new owner can enter into a new CRP contract with the government.[11] In short, the new owner is not required to perform the existing CRP contract.

For these reasons, this Court concludes that the CRP payments are not rents, but are more properly characterized as contract rights, general intangibles, or accounts. Similar contracts providing for government entitlements have been classified as either general intangibles or accounts.[12] In *In re Lions Farms, Inc.,*[13] the court held that payment in kind entitlements were "accounts" within the definition of "account" as a "right to payment for ... services rendered" under K.S.A. 84-9-106.[14] In *In re George,*[15] the court noted that the creditor could have classified its interest under the general classification of "accounts," but the creditor had specifically identified the collateral as ASCS or other government payments, as Stockgrowers did in this case. Thus, the Court concludes that the debtors' argument that Stockgrowers did not properly perfect a security interest in rents is without merit. Stockgrowers has shown a sufficient security interest for purposes of § 362(d)(1).

■ The debtors also alleged that because performance of the CRP contracts required them to continue to perform labor and maintenance post-petition, they are entitled to recover $2500 from the CRP payments for mowing expense incurred pre-petition, citing 11 U.S.C. § 506(c). Section 506(c) provides that:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

But the debtors do not have an independent right to seek payment of their claim under § 506(c). In *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*[16] the Supreme Court held that the trustee is the only party empowered to invoke § 506(c). While debtors-in-possession may also seek payment under § 506(c), the debtors are in a Chapter 7 bankruptcy and are not "debtors-in-possession."

**IT IS THEREFORE ORDERED BY THE COURT** that the motion for relief from stay filed by Stockgrowers State Bank shall be GRANTED.

**IT IS FURTHER ORDERED BY THE COURT** that the debtors are not entitled to payment under 11 U.S.C. § 506(c).

This Memorandum shall constitute findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered

---

11. 7 C.F.R. § 1410.51(a)(1) states, "If a new owner or operator purchases or obtains the right and interest in, or right to occupancy of, the land subject to a CRP contract, as determined by the Deputy Administrator, such new owner or operator, upon the approval of CCC, *may* become a participant to a new CRP contract with CCC with respect to such transferred land."

12. *See In re Sunberg*, 35 B.R. 777, 781 (Bankr. S.D.Iowa 1983) (finding that contractual right to a payment in kind is a general intangible), *aff'd* 729 F.2d 561 (8th Cir.1984); *In re Schmidt*, 38 B.R. 380 (Bankr.D.N.D.1984) (agreeing that a payment in kind contract is

an executory contract which is characterized as a general intangible under the U.C.C.).

13. 54 B.R. 241, 245 (Bankr.D.Kan.1985), *aff'd* 1987 WL 257855 (D.Kan.1987).

14. *See In re Schneider*, 864 F.2d 683, 685 (10th Cir.1988) (agreeing with the court in *Lions Farms*, that unpaid PIK diversion payments are rights under an executory contract which are properly classified as accounts under K.S.A. 84–9–106).

15. 119 B.R. 800, 804 (D.Kan.1990).

16. 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000).

on a separate document as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.